**WEIL, GOTSHAL & MANGES LLP**
**Attorneys for Debtors and**
**Debtors in Possession**
**767 Fifth Avenue**
**New York, New York 10153**
**(212) 310-8000**
**Martin J. Bienenstock, Esq. (MB 3001)**
**Deryck A. Palmer, Esq. (DP 6351)**

-and-

**TOGUT, SEGAL & SEGAL LLP**
**Co-Attorneys for Debtors and**
**Debtors in Possession**
**One Penn Plaza**
**New York, New York 10119**
**(212) 594-5000**
**Albert Togut, Esq. (AT 9759)**
**Frank A. Oswald (FAO 1223)**
**Sean P. McGrath (SM 4676)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11 Case No.** |
| AMES DEPARTMENT STORES, INC., *et al.*, | : | **01-42217 (REG)** |
| | : | |
| Debtors. | : | **Jointly Administered** |
| | : | |

------------------------------------------------------------- x

| | | |
|---|---|---|
| AMES DEPARTMENT STORES, INC., | : | |
| | : | **Adversary Proceeding** |
| Plaintiff, | : | **No. 06-_____ (REG)** |
| | : | |
| vs. | : | |
| | : | |
| THE ST. PAUL TRAVELERS COMPANIES, | : | |
| INC. F/K/A THE TRAVELERS INDEMNITY | : | |
| COMPANY, AND LUMBERMENS MUTUAL | : | |
| CASUALTY COMPANY D/B/A KEMPER | : | |
| INSURANCE COMPANIES, | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------- x

NY2:\1671776\08\ZTY808!.DOC\15079.0032

**COMPLAINT**

Plaintiff Ames Department Stores, Inc. ("Ames" or "Plaintiff"), as debtor and debtor in possession, alleges upon knowledge with respect to itself and its own acts, and upon information and belief as to all other matters, as follows:

**NATURE OF ACTION**

1.  This is an adversary proceeding in which Ames seeks (a) a declaratory judgment in respect of claims covered by insurance, (b) an order directing The St. Paul Travelers Companies, Inc. ("Travelers") to release to Ames excess collateral presently held by Travelers, and (c) an order directing Kemper Insurance Companies as successor in interest to Lumbermens Mutual Casualty Company ("Lumbermens", and together with Travelers, the "Defendants") to pay into trust for Travelers' benefit an amount equal to the estimated amount of Ames' obligations to Travelers under the Policies (as defined below) up to the outstanding amount of the Surety Bond (as defined below) issued by Lumbermens for Travelers' benefit.

**JURISDICTION AND VENUE**

2.  This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (E), and (O). Accordingly, this Court has the power to enter final findings of fact and conclusions of law, subject to review pursuant to 28 U.S.C. § 158. This proceeding is initiated under Bankruptcy Rules 7001(1) (to recover money or property), 7001(2) (to determine an interest in property), and 7001(9) (to obtain a declaratory judgment relating to the foregoing).

## THE PARTIES

4. Plaintiff Ames is a corporation organized under the laws of Delaware with its principal place of business at 175 Capital Blvd., Suite 102, Rocky Hill, Connecticut, 06067. On August 20, 2001 (the "Commencement Date"), Ames and its subsidiaries (collectively, the "Debtors") each commenced a case under chapter 11 of the Bankruptcy Code. The Debtors continue to be authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. Defendant Travelers is a corporation organized under the laws of Minnesota with its principal place of business at 385 Washington Street, St. Paul, Minnesota, 55102.

6. On or about April 1, 2004, Travelers and its affiliates merged with The St. Paul Companies, becoming The St. Paul Travelers Companies, Inc.

7. Defendant Lumbermens is a corporation organized under the laws of Illinois with its principal place of business at 1 Kemper Drive, Long Grove, Illinois, 60049.

8. As of January 1, 2005, Kemper Insurance Companies in the United States included Lumbermens Mutual Casualty Company and its affiliated property and casualty insurers. Kemper Insurance Companies is currently in the process of "running-off" all remaining property and casualty business.

## FACTUAL ALLEGATIONS

9. Beginning on November 1, 1998, Travelers and certain of its affiliates, including Constitution State Services LLC, issued to Ames certain insurance policies (the "Policies"), which include workers' compensation, automobile, and general liability policies, and provide insurance coverage for the Debtors in various states.

10. Pursuant to the Policies, Travelers is required to investigate, administer, defend, litigate, settle, and pay all claims for covered occurrences.

11. Ames renewed insurance coverage under the Policies after the Commencement Date, with continuing coverage through, and ultimately terminating on, November 1, 2002.

12. The Policies issued by Travelers to Ames during this period included:

| **POLICY YEAR** | **POLICY NUMBER** |
| --- | --- |
| 11/1/2001 – 11/1/2002 | 281D123A<br>281D1265<br>281D1277<br>281D1289<br>281D1290<br>240T5386<br>240T6856 |
| 11/1/2000 – 11/1/2001 | 281D123A<br>281D1265<br>281D1277<br>281D1289<br>281D1290<br>240T5386<br>240T6856 |
| 11/1/1999 – 11/1/2000 | 281D123A<br>281D1265<br>281D1277<br>281D1289<br>281D1290<br>240T5386<br>240T6856 |
| 11/1/1998 – 11/1/1999 | 281D123A<br>281D1265<br>281D1277<br>281D1289<br>281D1290<br>240T5386<br>240T6856 |

13.     In connection with issuance of the Policies, Ames and Travelers entered into claims services agreements (the "Service Agreements"), pursuant to which Travelers contracted to administer certain of Ames' self-insured general and automobile liability claims.

14.     Ames was required to pay the allowed claim amounts of these claims to Travelers and also to pay or reimburse Travelers for its expenses relating to the claims.

15.     Ames has payment obligations under the Policies and Service Agreements, and Ames and Travelers entered into corresponding premium payment agreements (the "Premium Agreements," and together with the Policies and Service Agreements, the "Insurance Program"), that prescribe the calculation and payment of premium and reimbursement obligations.

16.     For certain insurance coverage, payment obligations are based on the actual loss experience of Ames as the insured, which means premium payments reflect Ames' actual liability.

17.     Accordingly, under the Policies, Ames paid estimated premiums to Travelers. Ames would then make additional payments to Travelers, or receive reimbursement from Travelers, based on actual losses and expenses incurred under the Policies.

18.     The workers' compensation and automobile liability Policies are deductible policies pursuant to which Travelers is obligated to pay all claims within the limits of the Policies, including the amount of any applicable deductibles, and Ames is responsible for repaying Travelers the amount of the applicable deductible for each claim, up to a total of $500,000 per claim (the "Deductible").

19. The Policies provide that Travelers will remain responsible for the full payment of all claims without regard to Ames' obligation to reimburse Travelers for the Deductible, which is referred to as the "drop-down" feature of the Policies.

20. Accordingly, and because of the "drop-down" feature of the Policies, Travelers required Ames to post certain collateral in favor of Travelers to secure Ames' obligations under the Policies, including Ames' reimbursement obligation in respect of the Deductible.

21. Accordingly, on or about October 25, 2001, Ames obtained for Travelers' benefit two (2) letters of credit originally issued by First Union National Bank, as the predecessor in interest to Wachovia Corporation ("Wachovia"): No. SM418826P, in the amount of $14,600,000, and No. SMP418744P, in the amount of $12,250,000 (together, the "Letters of Credit").

22. After the Commencement Date, pursuant to Ames' debtor in possession financing agreement (the "DIP Agreement") with General Electric Capital Corporation, as Agent ("GE Capital"), as modified by a letter agreement between GE Capital and Ames executed June 3, 2005, GE Capital required Ames to provide and set aside cash collateral in the aggregate amount of $28,192,500 ($26,850,000, being the total amount of the Letters of Credit, plus 5% extra collateral of $1,342,500) to secure Ames' reimbursement obligations to Wachovia as issuer of the Letters of Credit.

23. On November 1, 2000, Ames obtained for Travelers' benefit a surety bond issued by Lumbermens: No. 3S-994-601, in the amount of $14,350,000 (the "Surety Bond," and together with the Letters of Credit, the "Collateral"). By the express terms of the Surety Bond, the obligations of Lumbermens to Travelers thereunder "shall not be

affected by (i) any failure by [Travelers] to assert any claim or demand or to enforce any right or remedy against [Ames] or its property, or any other party liable with respect to the Obligations [owed by Ames to Travelers]. . ."

24.     On or about March 21, 2002, Travelers filed multiple proofs of claim in the Debtors' chapter 11 cases, each of which included a description of the Insurance Program, and asserted claims in an unliquidated amount in respect of Ames' obligations to Travelers under the Policies.

25.     In May 2002, Travelers tendered to Lumbermens a demand for payment of $14,350,000 under the Surety Bond.

26.     When Lumbermens failed and refused to pay in response to Travelers' demand, Travelers commenced an action styled *The Travelers Indemnity Company v. Lumbermens Mutual Insurance Company*, Civ. Action No. 303 CV 989 (D. Conn.), seeking money damages from Lumbermens in the full face amount of the Surety Bond (the "Bond Action").   Ames was not a party to the Bond Action.

27.     Travelers and Lumbermens subsequently agreed to settle the Bond Action without prejudice pursuant to a letter agreement dated November 4, 2003 (the "Letter Agreement").   Although purporting to affect the respective rights of Travelers and Lumbermens with respect to Policies issued by Travelers to Ames, Ames — a debtor and debtor in possession at the time of negotiation and execution of the Letter Agreement — was not a party to the Letter Agreement.   In fact, no authority was ever sought or received from the Bankruptcy Court with respect to the Letter Agreement.

28.     Pursuant to the Letter Agreement, Lumbermens agreed to pay $8,000,000 into a trust for the benefit of Travelers (the "Trust Monies"), with such amount to

be applied, if necessary, to satisfy Ames' obligations to Travelers under the Insurance Program.

29. Although the terms of the Surety Bond did not condition Lumbermens' liability to Travelers thereunder upon Travelers' enforcement of its rights against other parties or collateral and, in fact, provided just the opposite, Travelers agreed in the Letter Agreement not to withdraw the Trust Monies until (i) after it first drew down the Letters of Credit, and (ii) only in the event that the proceeds of the Letters of Credit as drawn by and paid to Travelers proved insufficient to satisfy Ames' obligations to Travelers under the Policies.

30. The Letter Agreement further provides that Travelers may release and remit any unapplied Trust Monies in accordance with any Court order that directs the disposition of the proceeds of the Trust Monies.

31. Following execution of the Letter Agreement and the deposit by Lumbermens of $8,000,000 into a trust for Travelers' benefit as required thereby, Travelers dismissed the Bond Action without prejudice.

32. Ames has been advised by Travelers that it has neither applied nor returned any portion of the Trust Monies.

33. In accordance with the terms and conditions of the Insurance Program, Travelers is required periodically to calculate Ames' obligations thereunder, and to adjust (higher or lower) the amount of Collateral required to secure Ames' obligations. Travelers is further required to release to Ames the amount of any surplus Collateral held in excess of Ames' obligations as calculated by Travelers from time to time.

34. As set forth in the Letter Agreement, Travelers agreed with Lumbermens that such a calculation of Ames' obligations in respect of the Policies and the adjustment of the amount of Collateral sufficient to secure Ames' obligations in respect of the Policies, would be effectuated by September 30, 2004, and on an annual basis thereafter. Travelers, however, has failed and refused to make any such adjustment.

35. In August, 2004, Travelers performed a calculation to determine Ames' obligations under the Policies for the purpose of adjusting the amount of Collateral with respect to the potential losses from the anticipated ultimate payment of workers' compensation and automobile liability claims under the Policies. Based upon Travelers' calculations, the future value (as opposed to the present value) of Ames' obligations as of January 31, 2004 (which included 281 open claims — 277 workers' compensation claims and four (4) automobile liability claims) was $28,975,726. (From January 31, 2004 through July 28, 2006, Ames paid Travelers a total of $7,441,036 in respect of 163 claims that were settled and closed during this period. As a result of the settlements, 118 of the 281 claims that were open as of January 31, 2004 remain open, including three (3) automobile claims.)

36. Notwithstanding Travelers' January, 2004 calculation of Ames' potential liability for claims then open, at Ames' request, Mercer Oliver Wyman Actuarial Consulting, Inc. ("Mercer") prepared an actuarial valuation of the outstanding retained losses and allocated loss adjustment expense under the Policies with respect to the then outstanding workers' compensation claims in December, 2004. Mercer subsequently updated its report in December, 2005 (as updated, the "Actuarial Report").

37. According to the Actuarial Report, Ames' estimated outstanding liability for workers' compensation claims under the Policies as of October 31, 2005 was $12,802,825.

38. As of July 28, 2006, Ames estimated its ultimate liability for losses in respect of outstanding automobile claims under the Policies to be $523,504.

39. Ames has never defaulted in respect of any of its obligations to Travelers' under the Policies, and has continued to pay to Travelers all premiums and deductibles relating to any claims, including all prepetition claims, made under the Policies.

40. For the period between November 1, 2005 and July 28, 2006, Ames paid Travelers $1,871,967 in respect of outstanding workers' compensation claims, thereby reducing Ames' liability in respect thereof by the same amount.

41. Accordingly, an appropriate estimate of Ames' remaining liabilities for all claims under the Policies is $8,778,773 (the "Actual Liability Amount"), which amount consists of (i) $12,802,825 (the workers' compensation estimate per the Actuarial Report) plus (ii) $523,504 (the automobile liability estimate) minus (iii) $1,871,967 (the amount paid for workers' compensation claims since the date considered by the Actuarial Report) minus (iv) $2,675,589 (estimated at a discount rate of 5% based on the current yield of 10-year United States Treasury securities).

42. In light of its continued adherence to the terms of the Policies, the Collateral pledged by Ames to secure its obligations under the Policies — over $41.2 million (based on the Letters of Credit aggregating $28.192 million and the $14.35 million Surety Bond) — greatly exceeds the estimate of outstanding liabilities under the Policies.

43. Travelers has acknowledged to Ames that the $41.2 million in Collateral exceeds Travelers' own estimate of Ames' outstanding liabilities under the Policies.

44. Nonetheless, Travelers continues to be in breach of the provisions of the Policies that require annual calculations of estimated outstanding liabilities and corresponding adjustments to the amount of the Collateral securing Ames' obligations under the Policies.

45. Moreover, despite Ames' efforts to resolve consensually whatever differences exist as to the estimated Actual Liability Amount, as required under the Policies, Travelers has discontinued negotiations and stated that it will not adjust the amount of the Collateral without a Court order.

46. As a result, cash that could otherwise be distributed to Ames' creditors remains in Travelers' possession or control, securing purported "obligations" under the Policies that far exceed Ames' maximum liability thereunder.

47. In light of Travelers' failure and refusal to reduce the amount of the Collateral so as to approximate the amount of Ames' obligations under the Policies as secured thereby, Ames asks that this Court hold that the Actual Liability Amount is the proper estimate of Ames outstanding obligations under the Policies. Ames further requests that the Court direct Travelers to release, for the benefit of Ames' creditors, all Collateral that exceeds the Actual Liability Amount (the "Excess Collateral").

48. Additionally, because the Letters of Credit are secured by cash, any reduction of the Collateral securing Ames' obligations under the Policies must first be made

from the Letters of Credit, which will result in the release of cash for the benefit of Ames' estate and its creditors.

## FIRST CLAIM FOR RELIEF

### (Against Travelers For a Declaratory Judgment with Respect to the Actual Liability Amount Pursuant to 28 U.S.C. § 2201)

49. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though set forth herein.

50. Although Travelers has long been aware that the Collateral presently securing Ames' obligations under the Policies far exceeds any reasonable estimate of Ames' ultimate liability for losses and allocated loss adjustment expense under the Policies, Travelers has breached its obligation to reduce the Collateral to the Actual Liability Amount.

51. Additionally, Travelers is unwilling to reduce the Collateral without a Court order.

52. Thus, an actual controversy exists between Ames, Travelers and Lumbermens concerning the Actual Liability Amount and the corresponding collateral requirements necessary to secure Ames' obligation under the Policies.

53. Accordingly, Ames is entitled to a declaratory judgment finding the amount of its remaining liability to Travelers for losses and allocated loss adjustment expense under the Policies to be equal to the Actual Liability Amount (*i.e.*, $8,778,773).

**SECOND CLAIM FOR RELIEF**

**(Against All Defendants For a Declaratory Judgment
With Respect to the Release of Collateral Pursuant to 28 U.S.C. § 2201)**

54. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though set forth herein.

55. Pursuant to the Letter Agreement, Travelers agreed with Lumbermens that absent a Court order to the contrary, the Trust Monies would not be drawn upon until after Travelers had first drawn the full amount of the Letters of Credit, and the proceeds thereof (as paid to Travelers) proved insufficient to satisfy Ames' obligations to Travelers under the Policies.

56. Notwithstanding the Letter Agreement, Lumbermens' obligations to Travelers under the Surety Bond are *not* conditioned on Travelers' enforcement of its rights against any parties other than Lumbermens. Accordingly, after this Court determines the proper estimate of Ames' remaining liability to Travelers under the Policies, and, therefore, determines the amount of the Excess Collateral that Travelers must release, the first Excess Collateral to be released should be the Letters of Credit.

57. The Court should therefore direct that the Letters of Credit be cancelled and the cash collateral securing the Letters of Credit released, prior to Travelers' release of any portion of the Surety Bond. Directing Travelers to draw down the Surety Bond prior to satisfying Ames' obligations from the Letters of Credit will result in the release of the cash securing the Letters of Credit for the benefit of the Debtors' estates and creditors.

58. An actual controversy exists between Ames, Travelers and Lumbermens with respect to the order of release of Collateral as set forth in the Letter Agreement to which Ames was not a party.

59. Accordingly, Ames is entitled to a declaratory judgment that Ames' obligations under the Policies should be satisfied first from the Surety Bond prior to any draw on the Letters of Credit.

### THIRD CLAIM FOR RELIEF

**(Against All Defendants Requiring the
Marshaling or Targeted Use of Assets Collateralizing Ames'
Obligations to Travelers Pursuant to 11 U.S.C. §§ 1107 and 105)**

60. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though set forth herein.

61. Ames' obligations under the Policies are collateralized by both the Letters of Credit and the Surety Bond.

62. Wachovia's obligations, as issuer of the Letters of Credit, are secured by cash collateral constituting assets of Ames' estates.

63. Lumbermens' obligations to Travelers under the Surety Bond are cash collateralized by the $8,000,000 held in trust by Travelers pursuant to the Letter Agreement.

64. By reason of the foregoing, and assuming a default by Ames under the Policies, Travelers has two sources from which it can satisfy the obligations of Ames to Travelers under the Policies.

65. Pursuant to the Letter Agreement, however, to which Ames was not a party and for which no Bankruptcy Court approval was sought or received, Travelers agreed it would look first to the Letters of Credit cash collateralized by Ames to secure Ames'

obligations under the Policies, and would look to Lumbermens' Surety Bond only if the amount recovered under the Letters of Credit were insufficient to satisfy Ames' obligations under the Policies.

66. The amount available to Travelers under the Letters of Credit substantially exceeds the maximum potential liability of Ames to Travelers under the Policies. As a result, by agreeing to look to the Letters of Credit first, Travelers has in effect released Lumbermens from its obligations under the Surety Bond and in so doing appreciably increased the exposure of Ames' cash collateral securing the Letters of Credit, which cash collateral constitutes an asset of Ames' estates.

67. In the event of any failure by Ames to satisfy its obligations to Travelers under the Policies, and notwithstanding the Letter Agreement which is not binding on Ames, to help carry out Ames' statutory duty to maximize the estate for unsecured claimholders set forth in 11 U.S.C. § 1107, and alternatively pursuant to the equitable doctrine of marshaling, the Court should order Travelers to look first to the funds already deposited by Lumbermens with Travelers and to the remaining amounts outstanding under the Surety Bond to satisfy any obligations by Ames under the Policies, before resorting to the Letters of Credit. The use of the funds already in Travelers' possession will not impair or otherwise prejudice Travelers' rights, and Ames is entitled to a declaratory judgment that Ames' obligations under the Policies should be satisfied first from the Surety Bond prior to any draw on the Letters of Credit.

## FOURTH CLAIM FOR RELIEF

**(Against Travelers For Turnover of
Excess Collateral Pursuant to 11 U.S.C. § 542)**

68. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though set forth herein.

69. The Collateral currently securing Ames' obligations to Travelers under the Policies is $41,200,000.

70. The Actual Liability Amount as of July 28, 2006 is only $8,778,773.

71. The Excess Collateral currently held or controlled by Travelers constitutes property of the Debtors' estates.

72. Accordingly, pursuant to 11 U.S.C. § 542(a), Travelers should be ordered to turn over to Ames the Excess Collateral by canceling the Letters of Credit so that Ames' cash collateral in the aggregate amount of $28,192,500, which presently secures Ames' potential reimbursement obligations in respect of the Letters of Credit, can be released.

## FIFTH CLAIM FOR RELIEF

**(Against Travelers For Breach of Contract Pursuant to Applicable State Law)**

73. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Complaint with the same force and effect as though set forth herein.

74. The Policies are valid and binding contracts between Ames and Travelers.

75. Ames has complied with its obligations under the Policies.

76.  Travelers' continued refusal to return the Excess Collateral, which far exceed any amount Ames will ever owe to Travelers under the Policies, constitutes a breach of the Policies by Travelers.

[the remainder of this page is intentionally left blank]

77. By reason of the foregoing, Ames has been damaged by Travelers' breach of the Policies in an amount to be determined at trial but not less than $28,192,500.

WHEREFORE Plaintiff respectfully requests that this Court enter judgment:

(i) on the First Claim for Relief, declaring that the correct liability for losses and allocated loss adjustment expense under the Policies is the Actual Liability Amount ($8,778,773);

(ii) on the Second Claim for Relief, pursuant to 28 U.S.C. § 2201, declaring that Ames' obligations under the Policies should first be satisfied from the Surety Bond prior to any draw by Travelers on the Letters of Credit;

(iii) on the Third Claim for Relief, pursuant to 11 U.S.C. §§ 1107 and 105 and the equitable doctrine of marshaling, declaring that Ames' obligations under the Policies should first be satisfied from the Surety Bond prior to any draw by Travelers on the Letters of Credit;

(iv) on the Fourth Claim for Relief, pursuant to 11 U.S.C. § 542(a) of the Bankruptcy Code, directing Travelers to cancel the Letters of Credit, thereby permitting the release, for the benefit of Ames' estate and creditors, of Ames' cash collateral in the amount of $28,192,500 that presently secures Ames' potential reimbursement obligations to Wachovia in respect of the Letters of Credit;

(v) on the Fifth Claim for Relief, pursuant to applicable state law, finding that Travelers is in breach of the Policies for failure to return the Excess Collateral, and awarding damages in an amount to be determined at trial but not less than $28,192,500;

(vi) awarding Plaintiff interest, costs and attorney's fees; and

(vii) granting Plaintiff such other and further relief as is just and proper.

Dated: New York, New York
November 3, 2006

/s/ Martin J. Bienenstock
Martin J. Bienenstock, Esq. (MB 3001)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Attorneys for Plaintiff