**DEWEY & LEBOEUF LLP**
**Attorneys for Debtors and**
**Debtors in Possession**
**1301 Avenue of the Americas**
**New York, New York 10019**
**(212) 259-8000**
**Martin J. Bienenstock, Esq.**
**Adam J. Kaiser, Esq.**
**Timothy Q. Karcher, Esq.**

**-and-**

**TOGUT, SEGAL & SEGAL LLP**
**Co-Attorneys for Debtors and**
**Debtors in Possession**
**One Penn Plaza**
**New York, New York 10119**
**(212) 594-5000**
**Albert Togut, Esq.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re: | : |
| | : |
| **AMES DEPARTMENT STORES, INC.,** *et al.*, | : **Chapter 11 Case No.** |
| | : **01-42217 (REG)** |
| Debtors. | : |
| | : **Jointly Administered** |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| **AMES DEPARTMENT STORES, INC.,** | : |
| | : |
| Plaintiff, | : **Adversary Proceeding** |
| | : **No. 06-01890 (REG)** |
| | : |
| vs. | : |
| | : |
| **LUMBERMENS MUTUAL CASUALTY** | : **SECOND AMENDED** |
| **COMPANY D/B/A KEMPER INSURANCE** | : **COMPLAINT FOR DAMAGES** |
| **COMPANIES and AMERICAN MOTORISTS** | : **RESULTING FROM BREACH OF** |
| **INSURANCE COMPANY,** | : **CONTRACT, INTENTIONAL** |
| | : **VIOLATION OF AUTOMATIC** |
| Defendants. | : **STAY AND OTHER WRONGFUL** |
| | : **CONDUCT** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Ames Department Stores, Inc. ("Ames" or "Plaintiff"), a debtor and debtor in possession, alleges upon knowledge with respect to itself and its own acts, and upon information and belief as to all other matters, as follows:

## NATURE OF ACTION AND OVERVIEW

1.    This adversary proceeding against Lumbermens Mutual Casualty Company ("Lumbermens")[1] seeks declaratory relief and money damages from Lumbermens for its breach of contract, violation of the automatic stay, and other misconduct.

2.    Prior to the August 2001 commencement of its chapter 11 case, Ames contracted with Lumbermens, a commercial surety, for a $14,350,000 surety bond (the "Bond Agreement"), which Lumbermens issued to secure Ames' obligations to Ames' insurer, The St. Paul Travelers Companies, Inc. ("Travelers").[2]  Ames and Lumbermens are the only signatories to the Bond Agreement.

3.    The Bond Agreement is an unsecured, prepetition, "pay on demand" instrument, in which Lumbermens agreed with Ames that Lumbermens would pay Travelers within seven (7) days of a Travelers' demand, without any further condition.  Lumbermens' obligation to pay on demand is absolute.  Pursuant to the express terms of the contract, Lumbermens waived any rights to challenge a demand by Travelers.  Ames agreed to reimburse Lumbermens for payments made under the Bond Agreement.  Lumbermens had recourse against Ames, but could not refuse to pay Travelers on demand.  Ames paid good and valuable consideration for the benefits of an unsecured, pay on demand instrument.

---

[1] Kemper Insurance Companies is the successor in interest to Lumbermens.
[2] The portion of this adversary proceeding seeking relief from Travelers has been resolved.  This Second Amended Complaint sets forth the remaining claims against Lumbermens.

2

4.      When Ames commenced its chapter 11 case in August 2001, Ames' rights and interests in and under the Bond Agreement became property of Ames' estate, and thus, protected by the automatic stay imposed by section 362(a) of title 11 of the United States Code (the "Bankruptcy Code").  These rights and interests include Ames' right to Lumbermens' postpetition performance in accordance with the clear and unequivocal terms of the Bond Agreement.

5.      In May 2003, Travelers made a demand for the full amount of the surety bond.  In breach of its contractual obligation to Ames, Lumbermens refused to pay the $14,350,000 to Travelers.

6.      Travelers then sued Lumbermens to compel payment.  Still, Lumbermens refused to pay.   Then, Lumbermens and Travelers entered into a purported modification of the Bond Agreement (the "Bond Modification Agreement"), which, among other things, removed the valuable "pay on demand" component of the Bond Agreement, added numerous payment conditions to the Bond Agreement, and changed the Bond Agreement from a primary liability obligation to a secondary liability obligation, *all without this Court's approval or Ames' consent*.

7.      By changing a contract to which Ames was a party, Lumbermens exercised control over property of Ames' estate in violation of Bankruptcy Code section 362(a)(3).

8.      Pursuant to the Bond Modification Agreement, Lumbermens deposited $8 million with Travelers (the "Trust Monies"), to be held in trust, which Travelers could not apply until all other sources of collateral were exhausted, including two Letters of Credit (defined herein) separately posted by Ames, which Letters of Credit were collateralized by cash in Ames' estate.

NYC 685881.10

9.      The Bond Modification Agreement, therefore, rewrote key contractual terms and conditions of the Bond Agreement to remove the pay on demand requirement, which benefitted Ames.

10.     Lumbermens' modification of the Bond Agreement without Ames' consent diminished other estate assets, including cash collateral securing the Letters of Credit, which would have been returned to Ames if Lumbermens had performed in accordance with the Bond Agreement and paid Travelers on demand so that the Letters of Credit collateralized by cash in Ames' estate would not have been used.  These actions constitute Lumbermens' breach of its express and implied contractual obligations to Ames under the Bond Agreement, and represent a willful and deliberate violation of the automatic stay.[3]

11.     Therefore, by this action, Ames seeks, among other things,

(a)     damages from Lumbermens for:

(i)     breach of the express terms of the Bond Agreement;

(ii)    breach of the implied covenant of good faith and fair dealing;

(iii)   unjust enrichment; and

(iv)    violation and contempt of the automatic stay imposed by operation of section 362 of the Bankruptcy Code;

and

---

[3] It is clear why Lumbermens refused to pay and entered into the Bond Modification Agreement.  If Lumbermens paid under the Bond Agreement, it would have had a general unsecured indemnity claim in Ames' bankruptcy case. On or about March 18, 2002, Lumbermens filed a proof of claim in Ames' bankruptcy case (Claim Number 3246) in the amount of $24,241,958 for "Reimbursement Indemnity for losses and expenses" under various surety bonds issued to Ames.  Lumbermens' unsecured claim would be worth significantly less than the $14,350,000 Lumbermens has retained through its improper conduct.  This action seeks to prevent Lumbermens from realizing such a windfall as a reward for its wrongful conduct to the detriment of Ames' estate and creditors.

4

(b)      an order directing the payment of the Trust Monies, and remaining

amounts under the Bond Agreement, to Ames.

12.      In addition, Ames seeks entry of an order directing Lumbermens and/or

Lumbermens' affiliated property and casualty insurer, American Motorists Insurance Company

("AMIC"), to release to Ames excess collateral currently held by Lumbermens to secure a

Customs Bond (as defined below) and an accounting with respect to such collateral.

13.      Ames also seeks entry of an order equitably subordinating any claims

Lumbermens may assert in Ames' bankruptcy case, including any claims based upon theories of

setoff or subrogation, as a result of Lumbermens' unjust and inequitable conduct.

## JURISDICTION AND VENUE

14.      This Court has subject matter jurisdiction over this proceeding pursuant to

28 U.S.C. § 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

15.      This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A),

(E), and (O).  Accordingly, this Court has the power to enter findings of fact and conclusions of

law pursuant to 28 U.S.C. § 158.  This proceeding is initiated pursuant to Rule 7001 of the

Federal Rules of Bankruptcy Procedure.[4]

## THE PARTIES

16.      Plaintiff Ames is a corporation organized under the laws of Delaware with

its principal place of business at 805 Brook Street, Connecticut, 06067.  On August 20, 2001 (the

"Commencement Date"), Ames and its debtor affiliates (collectively, the "Debtors") each

commenced a case under the Bankruptcy Code with the United States Bankruptcy Court for the

Southern District of New York.  The Debtors continue to be authorized to operate their

---

[4]  In particular, the Debtors rely on the following subsections of Bankruptcy Rule 7001:  7001(1) (to recover money
or property), 7001(2) (to determine an interest in property), 7001(7) (equitable relief), 7001(8) (claim
subordination), and 7001(9) (to obtain a declaratory judgment relating to the foregoing).

5

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

17.     Defendant Lumbermens is a corporation organized under the laws of

Illinois with its principal place of business at 1 Kemper Drive, Long Grove, Illinois, 60049.

18.     Defendant AMIC is a corporation organized under the laws of Illinois with

its principal place of business at 1 Kemper Drive, Long Grove, Illinois, 60049.

19.     As of January 1, 2005, Kemper Insurance Companies in the United States

included Lumbermens and its affiliated property and casualty insurers, which include AMIC.

## FACTUAL ALLEGATIONS

**A.      The Insurance Program**

20.     Beginning on or about November 1, 1998, Travelers and certain of its

affiliates issued to Ames certain insurance policies ("Policies"), which included workers'

compensation, automobile, and general liability policies, providing insurance coverage for the

Debtors in various states.

21.     Pursuant to the Policies, Travelers was required to investigate, administer,

defend, litigate, settle, and pay all claims for covered occurrences.

22.     Ames renewed insurance coverage under the Policies after the

Commencement Date, with continuing coverage through November 1, 2002.

23.     In connection with the Policies, Ames and Travelers entered into claims

services agreements (the "Service Agreements"), pursuant to which Travelers contracted to

administer certain of Ames' self-insured general and automobile liability claims.

24.     Ames had payment obligations under the Policies and Service Agreements

(the "Obligations"), and Ames and Travelers entered into corresponding premium payment

agreements (the "Premium Agreements," and together with the Policies and Service Agreements,

6

the "Insurance Program"), that prescribed the calculation and payment of premium and

reimbursement Obligations.[5]

    25.    Travelers required Ames to provide certain credit enhancement of Ames'

reimbursement obligations in favor of Travelers under the Insurance Program.  Ames satisfied

this requirement through the Bond Agreement and the Letters of Credit.

**B.    The Bond Agreement**

    26.    On or about November 1, 2000, Ames contracted with Lumbermens for

the Bond Agreement, issued by Lumbermens, No. 3S-994-601, in the amount of $14,350,000 to

backstop obligations to Travelers under the Insurance Program.  A true and correct copy of the

Bond Agreement is annexed hereto as Exhibit A.

    27.    Ames and Lumbermens are the only signatories to the Bond Agreement.

    28.    The Bond Agreement is a valid contract, and at all relevant times, was in

full force and effect.

    29.    Pursuant to the Bond Agreement, Lumbermens agreed to be jointly and

severally liable to Travelers for all Obligations to Travelers under the Insurance Program.[6]

Specifically, Lumbermens agreed to assume $14,350,000 of Ames' Obligations, making such

obligations primary obligations of Lumbermens.  By the express terms of the Bond Agreement,

> [Ames] and [Lumbermens] . . . are held and firmly bound unto
> [Travelers] . . . for the payment of the Obligations (hereafter
> defined), up to the maximum penal sum of Fourteen Million Three
> Hundred Fifty Thousand and 00/100 Dollars, ($14,350,000.00)
> lawful money of the United States to payment of which sum,

---

[5] The workers' compensation and automobile liability Policies were deductible policies pursuant to which Travelers was obligated to pay all claims within the limits of the Policies, including the amount of any applicable deductibles, and Ames was responsible for repaying Travelers the amount of the applicable deductible for each claim, up to a total of $500,000 per claim.

[6] The Bond Agreement covers past, present, and future "Obligations" under the Insurance Program and contemplates that the Policies and Service Agreements "may be amended and/or renewed from time to time."  Ex. A, Bond Agreement ¶ 2.  Accordingly, the Bond Agreement covers all Obligations to Travelers under the Insurance Program and is not limited to any policy year.

NYC 685881.10

[Ames] and [Lumbermens] **hereby bind themselves, their successors and assigns, jointly and severally**, firmly by these presents.

Ex. A., Bond Agreement ¶ 1 (emphasis supplied).

30.     Ames performed all its material obligations under the Bond Agreement, including the payment of premiums.

31.     In addition to being unsecured, the Bond Agreement has several valuable attributes for Ames and its estate:

### a.     Lumbermens is Obligated to Pay on Demand

32.     First, the Bond Agreement is a "pay on demand" instrument.  The Bond Agreement does not condition payment upon the default of the bond principal.  The <u>only</u> condition to Lumbermens' payment obligation under the Bond Agreement is that a demand for payment be made by Travelers.

33.     Specifically, by the express terms of the Bond Agreement,

within seven (7) business days of [Lumbermens'] receipt of a demand for payment under [the] Bond ("<u>Demand</u>"), [Lumbermens] **shall** pay to [Travelers] the amount of such Demand.

Ex. A, Bond Agreement § 1 (emphasis supplied).

### b.     Lumbermens' Obligations Are Unconditional

34.     In addition, the Bond Agreement does not condition payment upon Lumbermens' investigation into the underlying facts and circumstances giving rise to the claim. The Bond Agreement's demand provision required Lumbermens to remit payment based solely on Travelers' demand:

[Travelers'] Demand to [Lumbermens] of the amount due, either as security or for payment or for reimbursement pursuant to the [Service Agreements], shall be **absolute proof** of the existence and

NYC 685881.10

extent of the **liability** of [Ames] **and [Lumbermens]** to [Travelers] hereunder.

Ex. A, Bond Agreement § 1 (emphasis supplied).

### c.       **Lumbermens' Obligations Are Without Regard to Other Collateral**

35.    The Bond Agreement also provides that Lumbermens' obligation to pay Travelers the full amount of the Bond Agreement upon demand is <u>absolute</u> and <u>without regard to other collateral</u>.

36.    Specifically, section 4 of the Bond Agreement provides that the "liability" of Lumbermens to Travelers under the Bond Agreement:

> **shall <u>not</u> be affected** by (i) any failure by [Travelers] to assert any claim or demand or to enforce any right or remedy against [Ames] or its property, **or any other party liable** with respect to the Obligations [owed by Ames to Travelers] . . . .

Ex. A, Bond Agreement § 4 (emphasis supplied).

37.    Section 4 of the Bond Agreement provides that the obligations of Lumbermens are not affected by Travelers' "release, impairment or other diminution of, any collateral" held by Travelers.  Ex. A, Bond Agreement § 4.

38.    Section 2 of the Bond Agreement provides that Lumbermens waived its rights to challenge Travelers' computation of the amount of the Obligations and Lumbermens waived its rights to challenge Travelers' application of the Bond Agreement to the Obligations.

39.    Specifically, section 2 of the Bond Agreement provides that Lumbermens:

> **waives**, to the fullest extent permitted by applicable law each and every right which it may have to contest [Travelers'] **computation of the Obligations or the application of the Bond Collateral** by [Travelers] to the Obligations, and waives, to the fullest extent permitted by applicable law, each and every right which it may have to seek reimbursement, restitution or recovery of any Bond Collateral.

9

Ex. A, Bond Agreement § 2 (emphasis supplied).

40.    The Bond Agreement creates an unsecured, pay on demand obligation on the part of Lumbermens, which obligation is unconditional and without regard to other collateral or sources of payment.

## C.    The Letters of Credit

41.    On or about October 25, 2001, in connection with the Insurance Program, Ames also obtained for Travelers' benefit two (2) letters of credit, originally issued by First Union National Bank, as the predecessor in interest to Wachovia Corporation ("Wachovia"): No. SM418826P, in the amount of $14,600,000, and No. SM418744P, in the amount of $12,250,000 (together, the "Letters of Credit", and together with the Bond Agreement, the "Ames Collateral").

42.    Unlike the Bond Agreement, the Letters of Credit were fully cash collateralized by Ames.[7]

43.    In total, as of May 2003, the Ames Collateral totaled approximately $42,542,500.

## D.    Travelers' Demand under the Bond Agreement

44.    On or about May 21, 2003, Travelers demanded that Lumbermens pay Travelers the sum of $14,350,000.

45.    Although Lumbermens was obligated under the clear and unequivocal terms of its Bond Agreement to pay Travelers without further condition within seven (7) days of

---

[7] After the Commencement Date, pursuant to Ames' debtor in possession financing agreement with General Electric Capital Corporation, as Agent ("GE Capital"), as modified by a letter agreement executed June 3, 2005, GE Capital required Ames to provide and set aside cash collateral in the aggregate amount of $28,192,500 ($26,850,000, being the total amount of the Letters of Credit, plus 5% extra collateral of $1,342,500) to secure Ames' reimbursement obligations to Wachovia as issuer of the Letters of Credit.

NYC 685881.10

such demand, Lumbermens breached its obligations to Ames and Travelers under the Bond

Agreement and refused to pay Travelers.

**E.      The Bond Action Against Lumbermens**

46.     Lumbermens refused to honor its obligations to pay Travelers on demand.

On or about June 4, 2003, Travelers filed an action with the United States District Court for the

District of Connecticut styled *The Travelers Indemnity Company v. Lumbermens Mutual*

*Insurance Company*, Civ. Action No. 303 CV 989 (D. Conn.), seeking money damages from

Lumbermens in the full penal sum of the Bond Agreement, plus interest, fees, and costs (the

"Bond Action").

**F.      The Bond Modification Agreement**

47.     Travelers and Lumbermens subsequently agreed to discontinue the Bond

Action, pursuant to the terms of the Bond Modification Agreement, dated November 4, 2003. A

true and correct copy of the Bond Modification Agreement is annexed hereto as Exhibit B.

48.     Ames was not a party to the Bond Modification Agreement.

49.     Ames did not consent to the Bond Modification Agreement.

50.     This Court did not approve the Bond Modification Agreement.

51.     Pursuant to the Bond Modification Agreement, Lumbermens modified the

Bond Agreement to which Ames was a party as follows:

(a)     The Bond Agreement was amended to provide that
"Travelers is **prohibited** from drawing on the $14,350,000
Bond Agreement … unless and until Travelers has first
drawn down the full $26,850,000 available under" the
Letters of Credit.[8]

(b)     Instead of paying $14,350,000 on demand, the Bond
Agreement was amended to provide that Lumbermens

---

[8] See Objection of Kemper/Lumbermens to Debtors' Proposed Stipulation with Travelers, dated June 8, 2007 at ¶ 1.
[Docket No. 10] (the "Objection") wherein Lumbermens summarizes its position.

NYC 685881.10

would pay **only** $8,000,000 (the "Trust Monies") to Travelers to be held in trust, and that such Trust Monies would **only** be applied **after** Travelers exhausted the Letters of Credit.

(c)    The Bond Agreement was amended to provide that Lumbermens' obligation on the **remaining portion** of the Bond Agreement would only arise **after** the Letters of Credit were applied **and after** the Trust Monies were fully exhausted.

(d)    The Bond Agreement and Insurance Program were amended to **prohibit** Travelers from voluntarily reducing or releasing the Letters of Credit until it returned the Bond Agreement to Lumbermens, together with the Trust Monies.[9]

52.    The Bond Modification Agreement:

(i)    removed Lumbermens' obligation to pay the Bond Agreement on demand,

(ii)    cancelled Lumbermens obligation to be "jointly and severally liable" with Ames to Travelers,

(iii)    eliminated Lumbemens' obligation to pay the Bond Agreement without regard to other collateral, and

(iv)    prohibited the release of other collateral, including the Letters of Credit, and in fact, explicitly required Travelers to look to other collateral first.

53.    The foregoing modifications of the Bond Agreement prevented Ames from realizing the benefit of its bargain with Lumbermens and harmed Ames' estate in the principal amount of the Bond Agreement.

54.    Lumbermens' actions deprived the Ames estate of real and expected benefits, including the application of $14,350,000 to satisfy Ames' Obligations to Travelers, for which Lumbermens was jointly and severally liable, and to which Travelers had already looked

---

[9] Id.

NYC 685881.10

to Lumbermens for payment.  As a direct and proximate result of Lumbermens' conduct, as

described herein, Ames was damaged in an amount of not less than $14,350,000 plus interest.

**G.      Lumbermens Did Not Seek Bankruptcy Court Approval
          To Modify Its Contractual Obligations to Ames**

55.    The contractual rights of the Bond Agreement are intangible property,

which is included within the Bankruptcy Code's definition of the estate of Ames.  Ames, as a

contracting party and signatory to the Bond Agreement, has a legal and equitable interest in the

Bond Agreement and in Lumbermens' good faith performance thereunder.

56.    Ames also had an interest in any excess collateral securing the Letters of

Credit.

57.    The Bond Modification Agreement modified Lumbermens' contractual

obligations under the Bond Agreement, without the consent of Ames, the counterparty to the

Bond Agreement.

58.    Lumbermens did not seek this Court's approval of the Bond Modification

Agreement.

59.    Lumbermens did not seek relief from the automatic stay imposed by

Bankruptcy Code section 362 in Ames' chapter 11 case to enter into the Bond Modification

Agreement or to alter and diminish Ames' contractual rights vis-à-vis the Bond Agreement.

60.    As evidenced by the Bond Modification Agreement itself, Lumbermens

recognized that its actions were at odds with Ames' bankruptcy case and the Bankruptcy Code.

Specifically, paragraph 6 of the Bond Modification Agreement grants this Court jurisdiction over

the Trust Monies, which have been earmarked for distribution in accordance with this Court's

direction.  Paragraph 6 of the Bond Modification Agreement, entitled "Superseding Court

Order", provides in relevant part, subject to Lumbermens' right to object:

13

> Travelers may return the unapplied proceeds [of the Trust Monies] in accordance with the order of the Bankruptcy Court overseeing Ames' bankruptcy case (or other court or authority with competent jurisdiction) that directs a different return or other disposition of the proceeds of the Collateral . . . .

Ex. B, Bond Modification Agreement, ¶ 6.

61. The Superseding Court Order clause provides a mechanism for this Court to partially protect the Debtors' estates from harm resulting from Lumbermens' failure to pay on the Bond Agreement and breach of its contractual obligations.

## H.   The Adversary Proceeding

62. By complaint dated November 3, 2006 (the "Initial Complaint"), Ames commenced this adversary proceeding against Travelers and Lumbermens.

63. In the Initial Complaint, Ames requested the Court, among other things, to fix the amount of Ames' Obligations to Travelers under the Insurance Program, and order the release of excess collateral provided by Ames to secure such Obligations.

64. Ames also demanded that the liability should be satisfied from the Bond Agreement prior to any draw from Travelers on the Letters of Credit under the equitable doctrine of marshalling. Ames also sought release of the Letters of Credit and a judgment based on breach of contract claims. Ames further demanded interest, fees, costs, and other just and proper relief.

## I.   Interim Settlement With Travelers

65. By stipulation and order dated May 24, 2007 (the "Stipulation and Order"), Travelers and Ames agreed, among other things, to (i) release one Letter of Credit, (ii) reduce the remaining Letter of Credit, and (iii) amend the Initial Complaint.

66. Lumbermens objected to the Stipulation and Order, stating that

NYC 685881.10

> Under a [Bond Modification Agreement] between Travelers and
> [Lumbermens] in November 2003 … Travelers is prohibited from
> drawing on the $14,350,000 [Bond Agreement] which Travelers is
> holding (the "Bond"), unless and until Travelers has first drawn
> down the full $26,850,000 available under the two LOCs and has
> applied the proceeds therefrom to the obligations of Ames.
> Further, Travelers is prohibited from releasing or reducing the
> LOCs until it first returns [Lumbermens'] Bond, together with the
> $8,000,000 in cash that [Lumbermens] paid in to a trust account
> for Travelers under the [Bond Modification Agreement].

Objection at ¶ 1.

67.     On November 5, 2007, after a hearing to consider the Stipulation and

Order, Lumbermens' Objection, and all other pleadings submitted in connection therewith, this

Court overruled Lumbermens' Objection, approved the Stipulation and Order, directed that one

of the Letters of Credit be cancelled, and the second Letter of Credit (the "Remaining Letter of

Credit") be reduced to the amount of $13,350,000.

68.     In connection with the approval of the Stipulation and Order, Ames filed

an amended Complaint (the "Amended Complaint").[10]

## J.     Final Settlement With Travelers

69.     By agreement dated November 25, 2008 (the "Settlement Agreement"),

Travelers and Ames agreed, among other things, to fix the amount of Ames's remaining

Obligations to Travelers under the Insurance Program.

70.     Thereafter, on or about November 26, 2008, Ames filed a motion (the

"Settlement Approval Motion") with the Bankruptcy Court seeking entry of orders (i)

authorizing the Debtors' entry into the Settlement Agreement, and (ii) directing the satisfaction

---

[10] By mutual agreement between Ames and Lumbermens, Lumbermens' time to answer or otherwise respond to the
Amended Complaint has been tolled, and to date, Lumbermens has not answered or otherwise responded to the
Amended Complaint.

NYC 685881.10

of the remaining Obligations to Travelers from the Trust Monies and the turnover of the Bond
Agreement monies to Ames.

71.     Lumbermens objected to the Settlement Approval Motion.

72.     On or about December 15, 2008, this Court entered the Settlement Order
Regarding Motion Pursuant To Section 105(a) Of The Bankruptcy Code And Bankruptcy Rule
9019 Approving Stipulation With The Travelers Indemnity Company And Certain Related Relief
(the "Settlement Order"), which approved the Debtors' entry into the Settlement Agreement and
directed that: (i) the amount of the remaining payment obligations under the Insurance Program
owed to Travelers was $6,511,508; (ii) Ames' Obligations to Travelers for the Insurance
Programs be satisfied from the Remaining Letter of Credit; and (iii) after satisfaction of the
Obligations for the Insurance Programs, the remaining undrawn amount of the Remaining Letter
of Credit be surrendered and cancelled.  Lumbermens consented to the Settlement Order.

73.     The Settlement Order specifically provided that, notwithstanding the
satisfaction of Ames' Obligations to Travelers, Ames and Lumbermens maintained their
respective arguments, positions, claims, and defenses regarding the interpretation of the Bond
Modification Agreement and the jurisdiction of the Bankruptcy Court to hear and dispose of
matters involving the Bond Modification Agreement, Bond Agreement, and the Trust Monies.[11]

## K.     The Customs Bond

74.     On or about November 29, 1993, Ames obtained a bond from
Lumbermens, for the benefit of the United States Department of the Treasury Customs Service
("Customs and Border Protection"), number 109331994, in the amount of $1,200,000 (the
"Customs Bond").

---

[11] Notably, the Settlement Order provided that the portion of the Settlement Motion seeking the turnover to Ames of
the Trust Monies and Bond Agreement is preserved and deferred, to be determined as part of this adversary
proceeding, notwithstanding the Settlement Order.

75.     The Customs Bond secures payment of any duty, tax, or charge and compliance with law or regulation as a result of importing or brokering foreign goods.

76.     A true and correct copy of the Customs Bond is annexed hereto as <u>Exhibit C</u>.

77.     Lumbermens required Ames to post certain collateral in favor of Lumbermens to secure Ames' obligations under the Customs Bond.  Accordingly, Ames obtained for Lumbermens' benefit two (2) letters of credit issued by Wachovia:  No. SE441593P, in the amount of $240,902.06, and No. SE441594P, in the amount of $1,754,320.80 (together, the "<u>Customs Bond Collateral</u>").

78.     Ames ceased importing or brokering foreign goods in or about October 2002.

79.     As of February 2009, according to a master file extract provided to Ames by the Customs and Border Protection, there are no open accounts receivables owing to the Customs and Border Protection.

80.     In light of Debtors' chapter 11 cases, and Ames' termination of the activity of importing or brokering foreign goods covered under the Customs Bond, the collateral pledged in the Customs Bond Collateral to secure the Customs Bond—almost $2 million— should be released to Ames.

81.     Despite Ames' demand, Lumbermens has refused to release the amount of the Customs Bond Collateral.

82.     As a result, cash that could otherwise be distributed to Ames' creditors is securing purported "obligations" under the Customs Bond that do not exist.

NYC 685881.10

83.     In light of Lumbermens failure and refusal to consent to release the Customs Bond Collateral, Ames asks this Court declare that no amount is owed to the Customs and Border Protection, and to direct Lumbermens to release, for the benefit of Ames' estate and creditors, all collateral securing the Customs Bond.

## FIRST CLAIM FOR RELIEF

### (For Breach of Contract Pursuant to Applicable State Law)

84.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Second Amended Complaint with the same force and effect as though set forth herein.

85.     The Bond Agreement is a contract.

86.     Ames and Lumbermens are the only signatories to the Bond Agreement.

87.     Ames is in privity of contract with Lumbermens under the Bond Agreement.

88.     Ames complied with its obligations under the Bond Agreement.

89.     Pursuant to the Bond Agreement, Lumbermens was required to pay on the demand of Travelers the amount of $14,350,000.

90.     Travelers made a valid demand for the full penal sum of the Bond Agreement in May 2003 in the amount of $14,350,000.

91.     Lumbermens failed to pay $14,350,000 to Travelers within seven (7) days of the demand, thereby breaching the Bond Agreement.

92.     As a consequence of Lumbermens' breach of the express terms of the Bond Agreement, Ames has suffered damages in excess of $14,350,000, plus interest, fees, and costs, no part of which has been paid although duly demanded.

NYC 685881.10

## SECOND CLAIM FOR RELIEF

### (For Breach of the Implied Covenant of Good Faith and Fair Dealing Pursuant to 11 U.S.C. § 105 and Applicable State Law)

93.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Second Amended Complaint with the same force and effect as though set forth herein.

94.    The Bond Agreement contains an implied covenant of good faith and fair dealing requiring that no party disturb the rights of the other party to obtain the full benefits of the agreement.

95.    Pursuant to the Bond Agreement, Lumbermens had a duty of good faith and fair dealing to Ames to pay $14,350,000 upon the demand of Travelers.

96.    Lumbermens breached its obligations to act fairly and in good faith towards Ames by, among other things, failing to pay Travelers $14,350,000 when demanded, and by entering into the Bond Modification Agreement which established a priority regime in favor of Lumbermens to the detriment of Ames and its estate.

97.    As a direct and proximate result of Lumbermens' breach of the implied covenant of good faith and fair dealing, Lumbermens is liable to Ames and its estate in an amount of not less than $14,350,000, with interest thereon, plus fees and costs.

## THIRD CLAIM FOR RELIEF

### (For Unjust Enrichment Pursuant to 11 U.S.C. § 105 and Applicable State Law )

98.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Second Amended Complaint with the same force and effect as though set forth herein.

19

99.     Lumbermens accepted and received premiums from Ames for the Bond Agreement.

100.     Lumbermens refused to perform its obligations under the Bond Agreement, namely its obligation to pay upon demand the sum agreed upon of $14,350,000 in the Bond Agreement.

101.     The Bond Modification Agreement established a postpetition priority regime whereby Travelers was required to look to Ames or the Letters of Credit before Travelers could seek redress from the Trust Monies or Bond Agreement.

102.     Consequently, Travelers was satisfied only through payments made by Ames and ultimately through payment from the Letters of Credit.

103.     Lumbermens' failure to perform has resulted in Lumbermens being unjustly enriched in the amount of the Bond Agreement, plus interest, no part of which has been paid by Lumbermens despite due demands for same.

104.     By failing to pay the Bond Agreement upon demand, Lumbermens decreased the amount of its unsecured claim against Ames in Ames' bankruptcy case by the penal sum of the Bond Agreement, and was thereby unjustly enriched at the expense of Ames' other creditors.

105.     Accordingly, Lumbermens is liable to Ames and its estate in the amount of not less than $14,350,000, with interest thereon, plus fees and costs.

NYC 685881.10

## FOURTH CLAIM FOR RELIEF

**(For Violation of the Automatic Stay and Contempt with respect to the Bond Agreement and Bond Modification Agreement Pursuant to 11 U.S.C. §§ 105 and 362(a))**

106.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Second Amended Complaint with the same force and effect as though set forth herein.

107.    The Bond Agreement is a contract.

108.    Contractual rights are intangible property and included within the Ames' estate.

109.    Subsequent to the Commencement Date, Lumbermens exercised control over property of Ames' estate and took action to obtain property of Ames' estate, including, but not limited to, the Ames' legal and/or equitable interests in the Bond Agreement and excess collateral securing the Letters of Credit, by modifying or cancelling the terms of the Bond Agreement through the Bond Modification Agreement and the priority regime established thereunder.

110.    The Bond Agreement, on its face, does not condition Travelers' rights to draw on the Bond Agreement.

111.    Pursuant to the Bond Modification Agreement, Lumbermens established a priority regime that prohibited Travelers from releasing excess collateral from the Letters of Credit to the Ames estate.

112.    Pursuant to the Bond Modification Agreement, Travelers was required to look for payment from Ames or the Letters of Credit before seeking payment from the Trust Monies or Bond Agreement.

21

113.    The excess collateral available under the Letters of Credit and payments made to Travelers on account of the Obligations constituted property of the Ames' estate.

114.    Lumbermens' acts to exercise control over property of the Debtors' estate and indirectly realize on its prepetition claims, constitute a violation of the automatic stay imposed by Bankruptcy Code section 362.  Accordingly, Lumbermens acted in contempt and violation of the automatic stay imposed by section 362 of the Bankruptcy Code, and the Court should enter an order declaring that (a) Lumbermens has violated, and is in contempt of, the automatic stay, (b) any and all actions taken by Lumbermens in violation of the automatic stay are null and void *ab initio*, and (c) Lumbermens shall take any and all actions necessary to compensate Ames for Lumbermens' actions in contempt and in violation of the automatic stay, including turnover of the Trust Monies to Ames and payment of remaining amounts under the Bond Agreement to Ames, no part of which has been paid although duly demanded, plus attorneys fees, interest, costs, compensatory damages and punitive damages.

## FIFTH CLAIM FOR RELIEF

### (For a Declaratory Judgment and Direction Pursuant to the Bond Modification Agreement)

115.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Second Amended Complaint with the same force and effect as though set forth herein.

116.    Lumbermens' liability pursuant to the Bond Agreement, and the Bond Modification Agreement, is absolute.

117.    The Bond Modification Agreement provides that Travelers may return the Trust Monies and Bond Agreement proceeds in accordance with an order of the Bankruptcy

22

Court overseeing Ames' bankruptcy case that directs a different return or other disposition of collateral.

118.    In light of Lumbermens' wrongful conduct as set forth herein, it is just, fair and equitable, and consistent with the Bond Modification Agreement, for this Court to direct that the Trust Monies and Bond Agreement proceeds be released to Ames.

## SIXTH CLAIM FOR RELIEF

**(Marshaling or Targeted Use of Assets Collateralizing Ames'
Obligations to Travelers Pursuant to 11 U.S.C. §§ 1107 and 105)**

119.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Second Amended Complaint with the same force and effect as though set forth herein.

120.    Ames' Obligations under the Insurance Program were collateralized by both the Letters of Credit and the Bond Agreement.

121.    Wachovia's obligations, as issuer of the Letters of Credit, were secured by cash collateral constituting assets of Ames' estates.

122.    Travelers made a demand on the Bond Agreement in May 2003.

123.    Travelers never made a demand on the Letters of Credit.

124.    Pursuant to the Bond Modification Agreement, Lumbermens' obligations to Travelers under the Bond Agreement were cash collateralized by the $8,000,000 in Trust Monies held by Travelers.

125.    As of May 2003, the amount available to Travelers under the Letters of Credit and the Bond Agreement exceeded the maximum potential liability of Ames to Travelers under the Policies.  As a result, by refusing to pay and forcing Travelers to look to the Letters of Credit first, Lumbermens has in effect been released from its obligations under the Bond

NYC 685881.10

Agreement and, in so doing, appreciably increased the exposure of Ames' cash collateral

securing the Letters of Credit, which cash collateral constitutes an asset of Ames' estate.

126.    Notwithstanding the Bond Modification Agreement, which is not binding

on Ames, to help carry out Ames' statutory duty to maximize the estate for unsecured

claimholders set forth in 11 U.S.C. § 1107, and alternatively pursuant to the equitable doctrine of

marshaling, the Court should declare that Travelers should have been compensated *first* by the

Trust Monies and Bond Agreement before recovering any monies from the Letters of Credit.

Ames is entitled to a declaratory judgment that Ames' obligations under the Policies should have

been satisfied, in whole or in part, from the Trust Monies and Bond Agreement.

## SEVENTH CLAIM FOR RELIEF

### (For a Declaratory Judgment with
### Respect to the Customs Liability Amount Pursuant to 28 U.S.C. § 2201)

127.    Plaintiff repeats and realleges each and every allegation contained in the

foregoing paragraphs of this Second Amended Complaint with the same force and effect as

though set forth herein.

128.    The Customs Bond Collateral presently securing Ames' obligations under

the Customs Bond exceeds Ames' potential liability for duty and fees owed to the Customs and

Border Protection.

129.    The excess collateral securing the Customs Bond is property of Ames'

estate.

130.    Lumbermens has failed to release the excess Customs Bond Collateral to

Ames.

NYC 685881.10

131.    An actual controversy exists between Ames and Lumbermens concerning the Customs Liability Amount and the corresponding collateral requirements necessary to secure Ames' obligation under the Customs Bond, if any.

132.    Ames is entitled to a declaratory judgment fixing the amount necessary to secure its obligations to the Customs and Border Protection.

## EIGHTH CLAIM FOR RELIEF

### (For a Declaratory Judgment
### With Respect to the Release of Customs Collateral Pursuant to 28 U.S.C. § 2201)

133.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Second Amended Complaint with the same force and effect as though set forth herein.

134.    After this Court determines the proper estimate of Ames' remaining liability to Lumbermens under the Customs Bond, and, therefore, determines the amount of the excess Customs Bond Collateral that Lumbermens must release, the Court should direct that the Customs Letters of Credit be cancelled or reduced and the cash collateral securing the Letters of Credit released.  Directing Lumbermens to reduce or cancel the Customs Bond will result in the release of the cash securing the Customs Letters of Credit for the benefit of the Ames' estate and creditors.

135.    An actual controversy exists between Ames and Lumbermens with respect to the release of excess Customs Bond collateral.

136.    Accordingly, Ames is entitled to a declaratory judgment that Ames' obligations under the Customs Bond should be fixed and the letters of credit securing the Customs Bond be cancelled or reduced.

NYC 685881.10

## NINTH CLAIM FOR RELIEF

**(For Turnover of
Excess Collateral Pursuant to 11 U.S.C. § 542)**

137.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Second Amended Complaint with the same force and effect as though set forth herein.

138.    The collateral currently securing Ames' obligations to the Customs and Border Protection under the Customs Bond is $1,995,222.86.

139.    As of February 2009, there was no actual liability under the Customs Bond.

140.    The excess collateral currently held or controlled by Lumbermens constitutes property of Ames' estate.

141.    Accordingly, pursuant to 11 U.S.C. § 542(a), Lumbermens should be ordered to account for and turn over to Ames the excess collateral by canceling the letters of credit securing Ames' obligations under the Customs Bond so that Ames' cash collateral, can be released for the benefit of the Ames' estate.

## TENTH CLAIM FOR RELIEF

**(For Equitable Subordination)**

142.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs of this Second Amended Complaint with the same force and effect as though set forth herein.

143.    Lumbermens engaged in inequitable conduct, including conduct described in this Second Amended Complaint, which caused injury to Ames' estate and creditors and conferred an unfair advantage to Lumbermens.

26

144.    Under principles of equitable subordination, all claims asserted against the

Debtors by, or on behalf of, or for the benefit of Lumbermens should be subordinated for all

purposes, including distribution, setoff, and/or subrogation, pursuant to sections 510(c) and

105(a) of the Bankruptcy Code.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

NYC 685881.10

145.    By reason of the foregoing, Ames has been damaged by Lumbermens'

actions, in an amount to be determined at trial.

WHEREFORE Plaintiff respectfully requests that this Court enter judgment:

(i)     on the First Claim for Relief, pursuant to applicable state law, declaring that Lumbermens breached its express contractual obligations to Ames under the Bond Agreement, and that as a result, Ames has suffered damages in an amount to be determined at trial not less than $14,350,000 plus interest, fees, and costs;

(ii)    on the Second Claim for Relief, pursuant to 11 U.S.C. § 105 and applicable state law, declaring that Lumbermens breached the implied covenant of good faith and fair dealing under the Bond Agreement, and that as a result of Lumbermens' breach, Ames and its creditors have suffered damages in an amount to be determined at trial not less than $14,350,000, plus interest, fees, and costs;

(iii)   on the Third Claim for Relief, pursuant to 11 U.S.C. § 105 and applicable state law, declaring that Lumbermens has been unjustly enriched at the expense of Ames' estate and that as a result, Ames and its creditors have suffered damages in an amount to be determined at trial not less than $14,350,000, plus interest, fees, and costs;

(iv)    on the Fourth Claim for Relief, pursuant to 11 U.S.C. §§ 105 and 362, declaring Lumbermens in contempt and violation of the automatic stay by, *inter alia*, improperly exercising control over property of Ames' estate by modifying the terms of the Bond Agreement through the Bond Modification Agreement, and prohibiting the release of excess collateral to Ames' estate without authority, and as a result, Ames has suffered damages in an amount to be determined at trial not less than $14,350,000, plus interest, fees, costs, compensatory damages and punitive damages;

(v)     on the Fifth Claim for Relief, pursuant to the Bond Modification Agreement, and in light of Lumbermens' wrongful conduct as set forth herein, declaring and directing that the Trust Monies and Bond Agreement proceeds be released to Ames;

(vi)    on the Sixth Claim for Relief, pursuant to 11 U.S.C. §§ 1107 and 105 and the equitable doctrine of marshaling, declaring Ames' Obligations under the Policies should have first been satisfied from the Bond Agreement prior to any draw by Travelers on the Letters of Credit and awarding damages in an amount to be determined at trial;

28

(vii)    on the Seventh Claim for Relief, pursuant to 28 U.S.C. §2201, declaring there is no liability for duty and fees owed to the Customs and Border Protection under the Customs Bond;

(viii)    on the Eighth Claim for Relief, pursuant to 28 U.S.C. §2201, declaring the collateral securing the Customs Bond be released to Ames for distribution to its creditors;

(ix)    on the Ninth Claim for Relief, pursuant to 11 U.S.C. § 542(a) of the Bankruptcy Code, directing Lumbermens to cancel the Customs Bond, thereby permitting the release, for the benefit of Ames' estate and creditors, of Ames' cash collateral that presently secures Ames' potential reimbursement obligations to Wachovia in respect of the Customs Bond Collateral;

(x)    On the Tenth Claim for Relief, pursuant to 11 U.S.C. §§ 510 and 105(a), declaring that under principles of equitable subordination, all claims and administrative expenses asserted against the Debtors by, or on behalf of, or for the benefit of Lumbermens be subordinated for all purposes, including distribution, setoff, and/or subrogation;

(xi)    declaring that the Trust Monies and remaining amount under the Bond Agreement be distributed to Ames;

(xii)    awarding Plaintiff compensatory damages, punitive damages, interest, costs and attorney's fees; and

(xiii)    granting Plaintiff such other and further relief as is just and proper.

Dated:  New York, New York
        March 31, 2009

/s/ Martin J. Bienenstock
Martin J. Bienenstock, Esq.
Adam J. Kaiser, Esq.
Timothy Q. Karcher, Esq.
DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
(212) 259-8000

Attorneys for Plaintiff

NYC 685881.10