UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
In re                                          :
                                               :    Chapter 11 Case No.
AMES DEPARTMENT STORES, INC., *et al.*,        :    01-42217 (REG)
                                               :
                            Debtors.           :      Jointly Administered
                                               :
-------------------------------------------------------------x
AMES DEPARTMENT STORES, INC.,                  :
                                               :    Adversary Proceeding
                            Plaintiff,         :    No.06-01890 (REG)
                                               :
            Vs.                                :
                                               :
LUMBERMENS MUTUAL CASUALTY                     :
COMPANY,                                       :
                                               :
                            Defendant.         :
-------------------------------------------------------------x

## MOTION TO CONFIRM EXCLUSIVE JURISDICTION OF BANKRUPTCY COURT OVER PROPERTY OF THE ESTATE AND ENJOINING ANY ATTEMPTS TO INTERFERE WITH TRUST MONIES

STORCH AMINI & MUNVES PC
Bijan Amini, Esq.
Avery Samet, Esq.
Two Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
(212) 490-4100

-and-

PROSKAUER ROSE LLP
Martin J. Bienenstock, Esq.
Timothy Q. Karcher, Esq.
Eleven Times Square
New York, New York 10036
(212) 969-3000
*Attorneys for the Debtors and Debtors in Possession*

## TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY......................................7

General Background .........................................................................................................7

The Trust Monies ..............................................................................................................8

The Adversary Proceeding.............................................................................................10

The December 2008 Order.............................................................................................12

The Amended Complaint & Lumbermens' Defenses.................................................13

Lumbermens' Administrative Claims Against Ames ..................................................14

The Agreed Rehabilitation Order.................................................................................15

ARGUMENT .....................................................................................................................16

   I.   THE MOTION SHOULD BE GRANTED IN ALL RESPECTS AND AMES'
      PROPOSED ORDER SHOULD BE ENTERED ............................................16

      A.  THE BANKRUPTCY COURT HAS EXCLUSIVE JURISDICTION OVER
         THE TRUST MONIES AND EXCESS COLLATERAL ...........................16

         1.  The Bankruptcy Court Has Exclusive Jurisdiction Over Questions
            Regarding Property of the Estate and the Automatic Stay ....................................16

         2.  The Bankruptcy Court Has Exclusive Jurisdiction to Determine
            Claims Against the Estate .......................................................................................19

         3.  The Bankruptcy Court Has Exclusive Jurisdiction to Interpret
            And Enforce its Own Prior Orders.........................................................................21

      B.  BECAUSE THIS COURT HAS ALREADY EXERCISED IN REM
         JURISDICTION OVER THE TRUST MONIES, THIS COURT EXERCISES
         JURISDICTION TO THE EXCLUSION OF ALL COMPETING COURTS.................22

C.  THE MCCARRAN-FERGUSON ACT MUST BE READ NARROWLY AND
DOES NOT SERVE TO OVERRIDE THE BANKRUPTCY CODE'S
ESSENTIAL PROVISIONS........................................................................................23

NOTICE.........................................................................................................................27

CONCLUSION................................................................................................................27

## TABLE OF AUTHORITIES

### Cases

Butner v. U.S.,
  440 U.S. 48 (1979) ................................................................................................................ 4

Central Virginia Community College v. Katz,
  546 U.S. 356 (2006) .............................................................................................................. 17

China Trade and Dev'l Corp. v. MV Choong Yong,
  837 F.2d 33 (2d Cir. 1987) ................................................................................................... 22

Donovan v. City of Dallas,
  377 U.S. 408 (1964) .............................................................................................................. 22

Gross v. Weingarten,
  217 F.3d 208 (4th Cir. 2000) ........................................................................................ 23, 25 n. 17

Group Life & Health Ins. Co. v. Royal Drug Co.,
  440 U.S. 205 (1979) .............................................................................................................. 24

In re AE Liquidation, Inc.,
  435 B.R. 894 (Bankr. D. Del. 2010) ..................................................................................... 16

In re Agway, Inc.,
  357 B.R. 195 (Bankr. N.D.N.Y. 2006) ................................................................................. 21

In re Ames Dep't Stores, Inc.,
  317 B.R. 260 (Bankr. S.D.N.Y. 2004) .................................................................................. 21

In re Chateaugay Corp.,
  116 B.R. 887 (Bankr. S.D.N.Y. 1990) .................................................................................. 19

In re Dominguez,
  312 B.R. 499 (Bankr. S.D.N.Y. 2004) .................................................................................. 20

In re First Cent. Fin. Corp.,
  269 B.R. 502 (Bankr. E.D.N.Y. 2001) .................................................................................. 23

In re Ionosphere Clubs Inc.,
  124 B.R. 635 (S.D.N.Y. 1991) ............................................................................................. 18

In re Kaiser Group Int'l Inc.,
  399 F.3d 558 (3d Cir. 2005) ................................................................................................. 17

In re Onecast Media, Inc.,
    439 F.3d 558 (9th Cir. 2006) ................................................................................. 17

In re Petrie Retail, Inc.,
    304 F.3d 223 (2d Cir. 2002) .................................................................................. 21

In re PRS Group Inc.,
    335 B.R. 77 (Bankr. D. Del. 2005)................................................................... 20, 27

In re Salander-O'Reilly Galleries, LLC,
    475 B.R. 9 (S.D.N.Y. July 10, 2012)..................................................................... 16

In re Yonikus,
    996 F.2d 866, 869 (7th Cir. 1993) ......................................................................... 17

Indiana Lumbermens Mutual Ins. Co. v. Rusty Jones, Inc., (In re Rusty Jones),
    124 B.R. 774 (Bankr. N.D. Ill. 1991)..................................................................... 20

Lander v. Hartford Life & Annuity Ins. Co.,
    251 F.3d 101 (2d Cir. 2001) .................................................................................. 24

Matter of Rimsat, Ltd.,
    98 F.3d 956 (7th Cir. 1996) ................................................................................... 17

McRaith v. American Re-Insurance Co.,
    2010 WL 624857  (N.D. Ill. 2010)......................................................................... 26

Princess Lida of Thurn and Taxis v. Thompson,
    305 U.S. 456 (1939) .............................................................................................. 22

Strong v. Western United Life Ass. Co. (In re Tri-Valley Distr., Inc.),
    350 B.R. 628, 2006 WL 2583247 (10th Cir. B.A.P. 2006)
    aff'd 533 F.3d 1209 (10th Cir. 2008) ..................................................................... 25

U.S. Dept. of Treasury v. Fabe,
    508 U.S. 491 (1993) ................................................................................... 24, 25 n. 17

United States v. Whiting Pools, Inc.,
    462 U.S. 198 (1983) .............................................................................................. 17

**Statutes**

11 U.S.C. § 1334(e)(1)................................................................................................ 16

11 U.S.C. § 362(a)(3).................................................................................................. 18

11 U.S.C. § 541(a) ................................................................................................ 16

11 U.S.C. § 542 ............................................................................................... 10, 13

11 U.S.C. § 105(a) ................................................................................................. 1

15 U.S.C. §§ 1011-1015 ....................................................................................... 23

28 U.S.C. § 1334(e)(1) ..................................................................................... 1, 16

28 U.S.C. § 157 ................................................................................................... 18

28 U.S.C. § 157(2)(G) ......................................................................................... 18

215 ILCS 5/192(3) .............................................................................................. 26

Sections 105(a) of the Bankruptcy Code ........................................................... 13

Section 362 of the Bankruptcy Code ...................................................... 2, 13, 25

Section 362(a) of the Bankruptcy Code ........................................................... 1, 3

Section 541 of the Bankruptcy Code ................................................................ 1, 2

Section 549 of the Bankruptcy Code ............................................................ 14, 25

Section 502(d) of the Bankruptcy Code ............................................................. 27

Sections 510(c) and 105(a) of the Bankruptcy Code ......................................... 13

Ames Department Stores, Inc. and its debtor affiliates, as debtors and debtors-in-possession (collectively, "Ames" or the "Debtors"), respectfully represent:

## PRELIMINARY STATEMENT

1.      By this motion, Ames seeks entry of an order pursuant to 11 U.S.C. §§ 105(a) (administration of the estate), 362(a) (the automatic stay), 363 (cash collateral) and 541 (property of the estate), and 28 U.S.C. § 1334(e)(1) confirming that the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has exclusive jurisdiction over, among other things, funds totaling approximately $8 million held in a trust account (the "Trust Monies"), putatively for the benefit of The Travelers Indemnity Co. ("Travelers") and constituting collateral backstopping Ames' obligations to Travelers, but over which Travelers has disclaimed all interest.  The Trust Monies are the subject of (i) a pending adversary proceeding commenced by the Debtors in 2006 against Lumbermens Mutual Casualty Insurance Co. ("Lumbermens"), Adversary Proceeding No. 06-1890 (the "Adversary Proceeding") and (ii) a pending motion to release the Trust Monies to the estate, filed by the Debtors in 2008, which, pursuant to an order of the Bankruptcy Court dated December 15, 2008 (the "December 2008 Order"), will be determined as part of the Adversary Proceeding.

2.      The Trust Monies are being in held in "trust" as a result of an unenforceable agreement (as defined below, the "Letter Agreement") entered into between Lumbermens and Travelers in violation of the automatic stay.  Lumbermens entered into the Letter Agreement without notice to Ames, while Ames was in bankruptcy, and without Bankruptcy Court approval. The Letter Agreement provided that Lumbermens would not pay Travelers the full $14.3 million demanded by Travelers under a forfeiture bond constituting collateral for Ames' obligations to Travelers, but would instead put $8 million into trust – with the caveat that the Trust Monies,

while constituting collateral, could only be used once Travelers had exhausted all *other* forms of collateral posted by Ames (i.e., cash-collateralized letters of credit). Thus, by the Letter Agreement, Lumbermens (a non-debtor, third party) mandated that the Debtors' cash-collateralized letters of credit be exhausted before application of Lumbermens' unsecured forfeiture bond. This violated the automatic stay because Lumbermens improperly exercised control over property of the Debtors' estate (the collateral) to improve Lumbermens' position vis-à-vis the estate and other unsecured creditors. In other words, by segregating the Trust Monies into a trust with these conditions – and later, by asserting those conditions to prevent the release of Ames' cash collateral – Lumbermens used Ames' letters of credit (and their underlying cash-collateral) to avoid becoming an unsecured creditor in Ames' bankruptcy to the detriment of Ames and its unsecured creditors.

3.    Therefore, resolution of the dispute concerning the Trust Monies requires the determination of two related issues which are central to title 11 of the United States Code (the "Bankruptcy Code"):

- Do the Trust Monies constitute property of Ames' bankruptcy estate pursuant to section 541 of the Bankruptcy Code; and

- Did Lumbermens violate the automatic stay arising under section 362 of the Bankruptcy Code?

4.    Before and after Ames filed for bankruptcy protection, Travelers operated Ames' workers compensation and other insurance programs. In connection therewith, Travelers required Ames to provide collateral to Travelers. The collateral was provided to Travelers in two forms. Some of the collateral was in the form of cash-collateralized letters of credit. The other form of collateral was a $14.3 million unsecured forfeiture bond provided by Lumbermens.

2

After Ames filed for bankruptcy Travelers made a demand for the full amount of the forfeiture bond, and Lumbermens refused to pay Travelers.  Lumbermens' failure to pay Travelers and the resulting Letter Agreement put Ames' cash-collateralized letters of credit at risk of being drawn by Travelers.

5.      In 2006, Ames commenced the Adversary Proceeding to release excess cash collateral held by Travelers, alleging that Travelers was over-collateralized by some $40 million. Ames commenced the Adversary Proceeding to preserve the cash backstopping the letters of credit for the benefit of Ames' other creditors.   Ultimately, Ames reached a settlement with Travelers whereby Ames' liability to Travelers was fixed and Travelers agreed to release all excess collateral to Ames.  Lumbermens, however, objected to Ames' settlement with Travelers on the grounds that any release of the letters of credit would impact Lumbermens' rights under the Letter Agreement to have Travelers look first to Ames' other collateral (the letters of credit) before accessing the Trust Monies.  Ames maintains that segregation of the Trust Monies is invalid under section 362(a) of the Bankruptcy Code and segregation of the Trust Monies improperly subjected Ames' other cash collateral to drawdown and diminished the cash available to Ames' creditors.  Nevertheless, pursuant to the December 2008 Order, Ames and Lumbermens agreed to (i) allow Ames to settle with Travelers and (ii) to reserve all rights and arguments to the Trust Monies as if Ames' settlement with Travelers had never occurred.

6.      Therefore, in addition to determining whether the Trust Monies constitute property of the estate and whether the Letter Agreement violated the automatic stay, resolution of the dispute concerning the Trust Monies *also* requires the interpretation of numerous orders previously issued by the Bankruptcy Court.

3

7.     Lumbermens has also asserted numerous claims against Ames.  Accordingly, resolution of the dispute with Lumbermens also requires the determination of Lumbermens' significant administrative expense and unsecured claims asserted against the estate.

8.     Thus, this dispute involves resolution of pure bankruptcy matters, most of which have been before the Bankruptcy Court since the commencement of Ames' chapter 11 cases.  It involves, at a minimum, (i) the determination of what constitutes property of the estate, (ii) the application and enforcement of the automatic stay, (iii) the interpretation of the Bankruptcy Court's prior orders, and (iv) the liquidation of bankruptcy claims asserted by Lumbermens.

9.     Lumbermens' efforts to avoid the Bankruptcy Court's jurisdiction over these matters have not escaped notice of the Bankruptcy Court.  As the Bankruptcy Court recently explained:

> I have been and remain very concerned about the rehabilitator's efforts to escape earlier agreements made in this Court and to evade the jurisdiction of the Federal Courts in this District.  I am also not at all clear as to the effect of the McCarran-Ferguson Act on this controversy, **as this controversy involves in its most relevant aspects enforcement of earlier Federal Court orders and determination of what is or is not property of the estate within the meaning of Section 541 of the Bankruptcy Code** and applicable state law that under [Butner v. U.S., 440 U.S. 48 (1979)] determines what is property of the estate.  All as contrasted to the regulation of insurance in Illinois or elsewhere.
>
> And, **plainly, determination of what is property of the estate is a core matter and fully within the constitutional power of bankruptcy judges and district judges alike to determine, as it's a classic exercise of the in rem jurisdiction of the Federal Courts with respect to matters in bankruptcy**, and would have been no less within their power to determine under the Bankruptcy Act of 1898 and in fact, its predecessors going back to the 1860s.

4

(October 1, 2012 Hearing Tr. 17:15-18:10, attached hereto as Exhibit A)(emphasis added).   As such, the Bankruptcy Court and only the Bankruptcy Court is the proper court to determine whether the Trust Monies should be turned-over to Ames.

10.     The December 2008 Order provided that Lumbermens would provide Ames with 45-days notice before attempting to subject the Trust Monies to the jurisdiction of any other Court so as to allow Ames the ability to first seek an order from the Bankruptcy Court protecting the Bankruptcy Court's exclusive jurisdiction.   Despite Lumbermens' agreement to provide 45-days notice of any attempt to deprive the Bankruptcy Court of exclusive jurisdiction, in June 2012, without notifying Ames, Lumbermens consented to the commencement of a state court insolvency proceeding in the Circuit Court of Cook County, Illinois (the "Rehabilitation Court"), pursuant to which the Illinois Director of Insurance was appointed as Rehabilitator for Lumbermens (the "Rehabilitator"). The Rehabilitator, represented here by the same counsel as Lumbermens, contends that the consensual rehabilitation filing divested the Bankruptcy Court of jurisdiction over the Trust Monies.   Nevertheless, the Rehabilitator has consented, in accordance with the December 2008 Order, to a standstill agreement to let the Bankruptcy Court, and not the Rehabilitation Court, determine the jurisdictional issue.[1]

11.     Lumbermens' consensual rehabilitation filing does not affect the exclusive jurisdiction of the Bankruptcy Court over the Trust Monies.   First, the exercise of exclusive jurisdiction over estate property and the operation of the automatic stay constitute elemental

---

[1] On October 19, 2012, the Rehabilitator filed a motion to withdraw the reference over this action.  Pursuant to the parties' agreed briefing schedule, Ames will be filing a separate brief opposing the withdrawal motion on November 9, 2012.  However, in the event the District Court withdraws the reference to the Bankruptcy Court to hear this matter, the arguments advanced herein concerning bankruptcy jurisdiction will apply equally to the District Court.

features of the federal bankruptcy system – features which cannot properly be outsourced to the Illinois state Rehabilitation Court.    Second, the disposition of Lumbermens' (and now the Rehabilitator's) administrative expense and unsecured claims against the estate – claims which are intertwined with the dispute over the Trust Monies – must be resolved in Ames' bankruptcy case and not in Illinois.    Third, both Ames' and the Rehabilitator's arguments require the interpretation of numerous prior orders issued by the Bankruptcy Court, both in the Adversary Proceeding and in Ames' chapter 11 case.    Fourth, as the Bankruptcy Court has already exercised its *in rem* jurisdiction over the Trust Monies, long-standing common law principles compel its continuing jurisdiction.    Further, resolution of Lumbermens' claims to the Trust Monies does not trigger reverse-preemption under the McCarran-Ferguson Act because it will have no impact upon Illinois' statutory scheme for the regulation of insurance:    any decision may only increase or decrease the pool of funds available to policyholders and creditors.    Even if there were such an impact, the field-clearing provisions of Bankruptcy Code at stake in this dispute (property of the estate and scope of the automatic stay) trump any tenuous connection to insurance regulation.

12.    Finally, by refusing to perform on an unambiguous obligation to pay Travelers' $14.3 million under a forfeiture bond, and then, by entering into the Letter Agreement in violation of the automatic stay, – in the process, tying-up millions of additional dollars of estate collateral – Lumbermens severely interfered with the administration of Ames' chapter 11 cases.[2] Today, resolution of the dispute concerning the Trust Monies is crucial to the orderly administration of Ames' estate and will likely have a material impact on Ames' distribution to

---

[2] Ames notes that according to the Agreed Order of Rehabilitation entered on July 6, 2012 (the "Rehabilitation Order"), the Illinois Director of Insurance has been overseeing Lumbermens and approving all material transactions since March 2003.  The Letter Agreement was entered into in November 2003.

6

unsecured creditors.  By contrast, the Rehabilitator does not argue that the Trust Monies will

have any material impact on Lumbermens' Rehabilitation.  Thus, if only as a matter of equity

and common sense, the Trust Monies should be resolved by the Bankruptcy Court and not by the

Rehabilitation Court.

13.    Therefore, Ames seeks an order confirming that the Bankruptcy Court continues

to maintain its *in rem* jurisdiction over the estate property that is the subject of the Adversary

Proceeding and that no Trust Monies be invaded absent Court order.  Furthermore, in order to

protect that jurisdiction, Ames also requests that all issues related to the Adversary Proceeding,

including Lumbermens' counterclaims, pre-petition claims and administrative expense claims, be

litigated before the Bankruptcy Court.[3]

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

General Background

14.    Prior to Ames' bankruptcy, Lumbermens had issued a $14.35 million unsecured

forfeiture bond in favor of Travelers, Ames' workers compensation insurer, backstopping all of

Ames' obligations to Travelers (the "Bond")(attached hereto as exhibit B).  The Bond was not a

typical bond.  As counsel for Lumbermens conceded at a previous hearing, the Bond was a

"forfeiture bond." (November 5, 2007 Hearing Tr. 25:15-16, attached hereto as Exhibit C).[4]  In

other words, the Bond did not condition payment on any default, rather the only condition to

payment was that Travelers make a demand for payment. In fact, as reflected on the face of the

Bond, Travelers' demand for payment under the Bond constituted "**absolute proof of the**

---

[3] Again, to the extent that the District Court grants the Rehabilitator's pending motion to withdraw the reference and rules on this motion itself, Ames seeks a similar order providing that the District Court, exercising bankruptcy jurisdiction, continue to exercise exclusive jurisdiction over the matters referenced herein.

[4] Counsel for Lumbermens is now counsel for the Rehabilitator.

**existence and extent of the liability of [Ames] and [Lumbermens] to [Travelers] hereunder.**"
(Bond § 1, emphasis added). In addition, Lumbermens waived any rights to challenge Travelers'
calculation of Ames' insurance obligations. (Bond § 2). Finally, Lumbermens waived any and all
legal or equitable defenses it would have to paying on the bond. (Id. § 4).

15.    In March 2002, Lumbermens filed an *unsecured*, pre-petition proof of claim in
Ames' chapter 11 case asserting, among other things, an *unsecured* contingent claim for $14.35
million predicated on its right to recover from Ames, pursuant to a separate pre-petition
agreement, the amount it might pay to Travelers under the Bond. (Claim No. 3246 at p. 2,
attached hereto as Exhibit D).  By doing so, Lumbermens acknowledged that the Bond could be
called and, if so, its recourse against Ames was in the nature of an *unsecured* pre-petition claim.

16.    In May 2002, Travelers tendered to Lumbermens a demand for payment of $14.35
million under the Bond.  Lumbermens refused to pay although, as the Bankruptcy Court noted,
such payment "at least seemingly was plainly required."  (Ex. C at 45:25-46:1).  Travelers then
sued Lumbermens in Connecticut state court to compel Lumbermens to pay on the Bond.  Faced
with an obvious and impending requirement to pay Travelers, but without recourse to full
reimbursement from Ames, Lumbermens set out to use estate property, namely Ames' other cash
collateral posted for Travelers benefit, to minimize its own exposure and reduce or eliminate its
unsecured claim.

<u>The Trust Monies</u>

17.    In November 2003, shortly after Travelers commenced suit, Lumbermens entered
into the Letter Agreement with Travelers whereby Lumbermens and Travelers agreed to settle the
matter (without prejudice) by paying Travelers $8 million under the Bond, but with several

8

important caveats.[5]  First, Lumbermens would pay only $8 million to Travelers (and not the full $14.35 million demanded), but the $8 million would be held in trust for the sole benefit of Travelers (the Trust Monies at issue here).  Second, Travelers, before looking to such Trust Monies, would be required to exhaust Ames' other cash collateral (fully collateralized letters of credit), which secured Ames' obligations to Travelers.[6]  Although the Letter Agreement has had a profound and lasting negative impact on the Ames estate, the Letter Agreement was entered into without notice to Ames and without approval from the Bankruptcy Court.

18.     The Letter Agreement further provided that "the claims of Travelers to the Trust Monies are superior in right and priority to those of any other creditors of Lumbermens" (Letter Agreement ¶ 1) and "the rights of Travelers in the Trust and the Trust Monies will not be affected or terminated if Lumbermens becomes the subject of an insolvency, liquidation, rehabilitation, or similar proceeding." (Id. ¶ 2).

19.     While the Letter Agreement provided (in ¶ 5) that Travelers would return to Lumbermens any unused portions of the Trust Monies,[7] it expressly recognized that the Ames Bankruptcy Court could direct a different disposition of such funds, including the turnover of the funds to Ames:

---

5 A copy of the Letter Agreement is annexed hereto as Exhibit E.

6 Specifically, Ames had obtained two letters of credit for Travelers' benefit which were fully cash collateralized pursuant to the debtor-in-possession financing agreement between Ames and General Electric Capital Corp. and approved by this Court by Order dated September 25, 2001.  (Docket No. 285).  All references to "Docket No. __" contained herein refer to the Ames main bankruptcy docket for Case no. 01-42217.

7  Paragraph 1 of the Letter Agreement provides that "the Trust Monies will be held and applied as proceeds of collateral ('Collateral') backing the obligations of Ames owed to Travelers … and subject to return as set forth in paragraph 5."

> Notwithstanding Travelers' agreement to return the unapplied proceeds as prescribed in paragraph 5 above, Travelers may return the unapplied proceeds in accordance with the order of the Bankruptcy Court overseeing Ames' bankruptcy case (or other court or authority with competent jurisdiction) that directs a different return or other disposition of the proceeds of the Collateral.

Id. at ¶ 6.  As the Bankruptcy Court later ruled in a finding of fact and conclusion of law, the Letter Agreement made it "exceedingly clear" that "[e]ach of Travelers and Lumbermens recognize that a Court order issued by this Court would trump their understanding" as to the disposition of the Trust Monies.  (Ex. C. at 48:1-3.)

The Adversary Proceeding

20.     In 2006, Ames commenced the Adversary Proceeding against both Travelers and Lumbermens seeking (i) to declare the priority shifting provisions of the Letter Agreement null and void and (ii) to cause Travelers to return excess cash collateral to Ames' estates on the grounds that Travelers was vastly over-collateralized.  At the time, Travelers was holding in excess of $40 million in collateral (consisting of two letters of credit plus the Trust Monies) beyond Ames' possible liability.  Thus, Ames' complaint sought, *inter alia*, a turnover order pursuant to 11 U.S.C. § 542, requiring Travelers to turn over all excess collateral to Ames as property of the estate.

21.     In November 2007, Ames and Travelers reached an intermediate settlement whereby Travelers agreed to release approximately $26 million in excess collateral in the form of letters of credit.  Lumbermens objected to this settlement, arguing that it interfered with its own rights under the Letter Agreement that Travelers hold the maximum amount of collateral from Ames' estate.  In addition, Lumbermens argued that under the Letter Agreement Travelers needed to return the Trust Monies to Lumbermens before reducing its total amount of collateral.

10

Finally, Lumbermens argued that the express provision of the Letter Agreement, permitting this Court to redirect the disposition of the Trust Monies, did not apply.

22.    At the November 5, 2007 hearing, the Bankruptcy Court overruled Lumbermens' objection and made findings of fact and conclusions of law.  Among other things, the Bankruptcy Court found that in had *in rem* jurisdiction over the dispute and over the Trust Monies:

> [this controversy] arises from an effort by the estate to avoid a continuing hold on its assets, collateral as posted, as to which [the Bankruptcy Court has] in rem jurisdiction, where the circumstances do not permit a continued hold on those assets. While neither the LCs nor the bond are property of the estate, cash posted as collateral to secure Wachovia's obligations under the letters of credit is property of the estate and it is that property that both the debtors and the Court have a legitimate interest in protecting.

(Ex. C at 50:1-9).  In addition, the Bankruptcy Court found that the Letter Agreement "had two express carve-outs for releases of Travelers collateral pursuant to a Court order and that the possibility of such a Court order was expressly contemplated by the parties." (Id. at 44:2-4). This Court further ruled that because Ames was not a party to the Letter Agreement, Ames could not be bound by it. (Id. at 46:3-4).  Lumbermens did not appeal the Court's November 5, 2007 decision.

23.    In November 2008, Ames and Travelers reached a provisional final settlement whereby the parties would fix Ames' liability to Travelers and Travelers would return all excess collateral to Ames.  Pursuant to the parties' stipulation, which remained subject to Court approval (the "Final Travelers Settlement Stipulation" attached hereto as Exhibit F), the mechanics of the settlement were as follows:  (i) Ames' liability to Travelers would be fixed at approximately $6.5 million, (ii) the payment would be made immediately from a direct draw by Travelers from a letter of credit posted by Ames, and (iii) Ames would simultaneously seek an order from the

11

Court directing Travelers to return the balance of the undrawn letter of credit and the Trust Monies to Ames. (Ex. F at p. 5 ¶ P).[8]

24.    Thus, by motion pursuant to Bankruptcy Rule 9019 dated November 26, 2008 (Docket No. 3369), Ames sought entry of (i) an order approving the Final Travelers Settlement Stipulation and (ii) an "Collateral Release Order" directing the turnover of the Trust Monies to Ames and canceling the remaining letter of credit.  Ames relied on the express language of the Letter Agreement providing for this Court's power to direct the disposition of the Trust Monies and the Court's previous findings of fact and conclusions of law from November 2007.  Once again, Lumbermens objected to the proposed settlement affirmatively claiming that its own interest in the Trust Monies prevented their release to the Ames' estate.

The December 2008 Order

25.    At the December 15, 2008 hearing on Ames' motion to approve the final settlement with Travelers, the three parties, Ames, Travelers and Lumbermens, jointly presented the December 2008 Order for entry (Docket No. 3379, attached hereto as Exhibit G).  This order provided that (i) "that portion of [Ames'] Motion which sought the release and turnover to Ames of the Trust Monies is preserved and deferred, as still pending, to be determined as part of the Adversary Proceeding in such procedural format as this Court may determine" (id. at p. 3, second paragraph); (ii) the remaining portions of the Final Travelers Settlement would be approved (id. at p. 2-3); and (iii) the parties would retain all of their rights and arguments

---

8  The Final Travelers Settlement Stipulation made clear that the Trust Monies continued to back Ames' insurance obligations to Travelers. (Id. ¶ H).

concerning the Trust Monies which would continue to held by Travelers. (<u>Id.</u> at p.3, second paragraph).[9] Moreover, Lumbermens agreed that it would not attempt to subject the Trust Monies to the jurisdiction of any other court without granting Ames 45 days written notice so that Ames could petition this Court for appropriate relief. (<u>Id.</u> at p.7, second full paragraph).  The December 2008 Order specifically provided that "this Court shall retain jurisdiction to resolve any disputes between and/or among Debtors, Lumbermens and Travelers regarding the interpretation of this Order." (<u>Id.</u> at p. 8, final paragraph).

<u>The Amended Complaint & Lumbermens' Defenses</u>

26.     In March 2009, after settling with Travelers, Ames amended the complaint in the Adversary Proceeding to proceed against Lumbermens alone, seeking (i) $14.35 million in damages by reason of, *inter alia*, the Letter Agreement's provision for payment of estate liabilities from other estate collateral, rather than the Bond, (ii) an order pursuant to section 362 of the Bankruptcy Code that, through the Letter Agreement, Lumbermens violated the automatic stay, (iii) a declaratory judgment that the Trust Monies belong to Ames, (iv) a marshalling of the Trust Monies, (v) turnover of excess collateral pursuant to section 542 of the Bankruptcy Code, and (vi) equitable subordination pursuant to sections 510(c) and 105(a) of the Bankruptcy Code. Lumbermens answered the second amended complaint on May 8, 2009, whereupon the parties proceeded to discovery.

---

[9] This preservation language was extremely broad and provided that neither Ames nor Lumbermens would invoke or rely upon the Travelers settlement as a defense or argument in their favor, "it <u>being the present intention</u>, of this reservation of rights to leave the Debtors and Lumbermens in the same position in the Adversary Proceeding or any other proceeding now existing or in the future which may exist, as if the Approval Events had not occurred." <u>Id.</u> at page 3, fourth paragraph, to page 4 (emphasis in original).  Thus, the December 2008 Order preserved the fiction that the settlement with Travelers had not been consummated, for purposes of litigation over the Trust Monies.

27.     In its Answer, Lumbermens asserted numerous affirmative defenses relying provisions of the Bankruptcy Code and the previous orders of the Bankruptcy Court, including: (1) the defense that pursuant to the Bankruptcy Court's August 21, 2001, Order authorizing Ames to continue its workers compensation programs and related insurance policies (the "Workers Compensation Order") Ames assumed and/or ratified its pre-petition obligations to Travelers and Lumbermens (Answer, ¶¶ 33-34);[10] (2) the defense that the substantive and procedural limitations of section 549 of the Bankruptcy Code (governing post-petition transfers) applied to bar Ames' from pursuing the Trust Monies (Id., ¶¶ 56-58); and (3) the defense that the Bankruptcy Code's automatic stay did not apply to Lumbermens' or Travelers actions (Id., ¶ 80). In addition, Lumbermens filed numerous counterclaims against the estate. (Id., ¶¶ 91-127).

Lumbermens' Administrative Claims Against Ames

28.     In June 2010, Lumbermens filed a $7.2 million administrative expense claim against the Debtors and in June 2011, Lumbermens filed a second $10.7 million administrative claim. Both claims related to the Adversary Proceeding and were asserted in the nature of counterclaims against the estate.  In August 2011, Ames objected to both administrative claims and sought to expunge or reclassify them as pre-petition claims.  Lumbermens responded that the claims were inextricably intertwined with the Adversary Proceeding and could be not be decided individually. (Lumbermens' Opposition to Ames' Objection is attached hereto as Exhibit J).  At a hearing in September 2011, and after Lumbermens agreed to immediately fix the amount of its administrative claims at $2 million, this Court directed that the administrative claims be tried with the Adversary Proceeding (the "September 2011 Decision").  Subsequently, the parties

---

[10] The Workers Compensation Order (Docket No. 43) is attached hereto as Exhibit H.  Lumbermens' Answer is attached hereto as Exhibit I.

14

submitted to the Court a stipulation memorializing the September 2011 Decision, which the

Court so-ordered on September 21, 2011 (Docket No. 3939, attached hereto as Exhibit K).[11]

The Agreed Rehabilitation Order

29.    On June 26, 2012, Lumbermens' board of directors voted unanimously to consent

to the commencement of the rehabilitation proceeding.  See Exhibit L.  Lumbermens failed to

provide any advance notice to Ames of this decision.   On Monday, July 2, 2012, the

Rehabilitation Court entered the Rehabilitation Order (a copy of which is attached hereto as

Exhibit M), which purports to enjoin all parties from further prosecuting any actions against

Lumbermens or any of its property or assets.  (Id. at p. 14 ¶ D.)  Ames immediately sought to file

an expedited motion confirming the Bankruptcy Court's exclusive jurisdiction over the Trust

Monies pursuant to the December 2008 Order.[12]

30.    Ultimately, Ames and the Rehabilitator agreed to a two-tiered standstill

agreement: first, neither party would take any action until September 14, 2012, by which date the

Rehabilitator would inform Ames in writing whether or not it consented to the exclusive

jurisdiction of the Bankruptcy Court over the Trust Monies; second, in the event the

Rehabilitator would not consent, Ames would have an additional 45 day period to move the

---

[11] The parties and the Court initially set the Adversary Proceeding (together with all related matters) for trial on
April 17, 18, and 19, 2012.  Subsequently, the trial was adjourned to October 30 and 31, 2012.

[12] On July 11, 18 and 30, the Court conducted three telephonic conferences concerning the procedural resolution of
this motion.  Pursuant to the Bankruptcy Court's practice rules, Ames first wrote to the Court and appended its
proposed motion.  On the first telephonic conference, the Court suggested that the parties attempt to negotiate a
standstill to allow Ames' motion to be heard on a non-emergency basis.  When the parties could not finalize such an
agreement, Ames filed its motion by order to show cause.  The Court then held two additional telephonic
conferences concerning the briefing of Ames' motion and the proposed standstill agreement.  The discussions
culminated in the August 1, 2012 stipulation and order regarding the standstill agreement.

Bankruptcy Court for an order confirming such exclusive jurisdiction. (the August 1, 2012 Stipulation and Order Regarding the Standstill Agreement is attached hereto as Exhibit N.)

31.     Ames renewed its jurisdictional motion on September 14, 2012 once the Rehabilitator refused to consent.  Shortly thereafter, the Rehabilitator sought and was granted permission by the Bankruptcy Court to make a motion pursuant to Bankruptcy Rule 5011 to withdraw the reference (the "Withdrawal Motion").  However, the Bankruptcy Court directed the parties to simultaneously complete the briefing on Ames' jurisdictional motion, with the proviso that Ames be allowed to refashion its opening brief in light of the fact that the jurisdictional motion could end up being heard by the District Court.

## ARGUMENT

### I.   THE MOTION SHOULD BE GRANTED IN ALL RESPECTS AND AMES' PROPOSED ORDER SHOULD BE ENTERED

### A.   THE BANKRUPTCY COURT HAS EXCLUSIVE JURISDICITON OVER THE TRUST MONIES AND EXCESS COLLATERAL

#### 1.   The Bankruptcy Court Has Exclusive Jurisdiction Over Questions Regarding Property of the Estate and the Automatic Stay

32.     The Bankruptcy Court has exclusive jurisdiction over estate property. See 11 U.S.C. § 1334(e)(1)("The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.").  See also 11 U.S.C. § 541(a)(the bankruptcy estate is comprised of all of the debtor's legal and equitable interest in "property, wherever located and by whomever held").  In addition, the Bankruptcy Court also has exclusive jurisdiction to determine whether or not property constitutes property of the estate. See In re AE Liquidation, Inc., 435 B.R. 894, 904 (Bankr. D. Del. 2010); see also In re Salander-

16

O'Reilly Galleries, LLC, 475 B.R. 9, 28-30 (S.D.N.Y. July 10, 2012)(collecting cases and holding that determination of what property constitutes the bankruptcy estate is a core proceeding, especially where the party claiming the property has filed a proof of claim against the estate).

33.    In fact, the primacy of the Bankruptcy Court over estate property is one of the most critical features of the Bankruptcy Code.  See Central Virginia Community College v. Katz, 546 U.S. 356, 363-364 (2006)("**Critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property**, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a "fresh start" by releasing him, her or it from further liability for old debts.")(emphasis added).  In fact, "[t]he efficacy of the bankruptcy proceeding depends on the court's ability to control and marshal the assets of the debtor wherever located."  Matter of Rimsat, Ltd., 98 F.3d 956, 961-2 (7th Cir. 1996)(Posner, J.)(upholding bankruptcy court's refusal to abstain after foreign receivership filed in Nevis).

34.    Ames' interests in all the collateral, and especially in the excess collateral after application of the letters of credit, constitute property of Ames's estates.  See In re Kaiser Group Int'l Inc., 399 F.3d 558, 566 (3d Cir. 2005) (trustee's interest in excess collateral from letter of credit is property of the estate, and thus within the bankruptcy court's jurisdiction); In re Onecast Media, Inc., 439 F.3d 558, 564 (9th Cir. 2006) (same).  Moreover, Ames' estates have a cognizable interest, real and/or equitable, in the Bond and the application of its proceeds.  See United States v. Whiting Pools, Inc., 462 U.S. 198, 204-05 (1983) (section 541 is broadly interpreted to include any legally enforceable right of the debtor); In re Yonikus, 996 F.2d 866, 869 (7th Cir. 1993) ("every conceivable interest of the debtor, future, nonpossessory, contingent,

17

speculative, and derivative, is within the reach of § 541."). Accordingly, the validity and enforcement of the Letter Agreement (which purportedly affects the Bond, and alters the contractual relationships between Ames, Lumbermens, and Travelers) constitute "core" proceedings over which the Bankruptcy Court has exclusive jurisdiction. Clearly, these are issues over which the bankruptcy court has exclusive, congressionally mandated jurisdiction.

35.      Similarly, the automatic stay and its enforcement are core bankruptcy functions which are central to the bankruptcy process. See 28 U.S.C. § 157(2)(G); In re Ionosphere Clubs Inc., 124 B.R. 635, 638 (S.D.N.Y. 1991)("a proceeding to prosecute a violation of the automatic stay is a core proceeding within the meaning of 28 U.S.C. § 157. Enforcement of the automatic stay is essential to orderly and equitable administration of the estate.") Notably the automatic stay proscribes "any act to obtain possession of property of the estate or of property from estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

36.      By attempting to use and exercise control over Ames' collateral – mandating that Travelers deplete Ames' existing cash collateral, and purporting to bar Travelers from using the Trust Monies – the Letter Agreement unambiguously violated the automatic stay. Therefore, because those provisions of the Letter Agreement were null and void *ab initio*, the Trust Monies should have been immediately available to Travelers to fulfill Ames' obligations and a corresponding amount of Ames' other cash collateral should have been released to Ames.[13] Any recognition of the Letter Agreement's priority provision, even for jurisdictional purposes, would allow Lumbermens to benefit from its inequitable conduct.

---

[13] As discussed above, pursuant to the December 2008 Order, the parties preserved the fiction that the settlement with Travelers had not been consummated. Therefore, the Court should assume that Travelers is still holding excess collateral on behalf of Ames, which can be released if it applies the Trust Monies to any debt owed by Ames.

37.    Moreover, the Rehabilitator's contention that the Bankruptcy Court lacked jurisdiction in the first instance, let alone exclusive jurisdiction, is belied by the Bankruptcy Court's previous interpretation of the Letter Agreement and by applicable case law.  As discussed above, by entering into the Letter Agreement, Lumbermens expressly consented to a disposition of the Trust Monies by "the Bankruptcy Court overseeing Ames' bankruptcy case (or other court or authority with competent jurisdiction)." (the "Superseding Court Order Clause")(Ex. E, Letter Agreement ¶ 6).  Second, the Bankruptcy Court emphatically rejected Lumbermens' interpretation of the Superseding Court Order Clause:

> Each of Travelers and Lumbermens recognize that a Court order issued by this Court would trump their understanding... They expressly contemplated the possibility of a Court order by this or another Court and made Travelers acknowledge that Lumbermens would resist any effort by Ames to secure such a Court order. "To modify, release, diminish or extinguish the LOCs" – and I was quoting – and in essence gave Lumbermens a reservation of rights to try to make the arguments we heard last week and today.

(Ex. C, 48:2-11).  Third, there is clearly bankruptcy jurisdiction for claims by a debtor against a surety for failure to perform under pre-petition bonds. See In re Chateaugay Corp., 116 B.R. 887, 898-9 (Bankr. S.D.N.Y. 1990)(core jurisdiction for declaratory judgment action by debtor against surety for failure to pay bonds securing workers compensation program).

## 2.  The Bankruptcy Court Has Exclusive Jurisdiction to Determine Claims Against the Estate

38.    In opposing the pending motion to release the Trust Monies to the estate,[14] *Lumbermens* (and now the *Rehabilitator*), is claiming the funds for itself and affirmatively asserting its own property interest against the Debtors' estate based on its own interpretation of the Letter Agreement.  Assertions of property interest against a debtor's estate must be heard in

---

[14] The motion that remained pending pursuant to the December 2008 Order.

19

the debtor's bankruptcy forum and are subject to the automatic stay.  See In re PRS Group Inc., 335 B.R. 77 (Bankr. D. Del. 2005)(bankruptcy court had exclusive jurisdiction over claims by insurer's state court liquidator against the bankruptcy estate).  See also In re Dominguez, 312 B.R. 499, 506-07 (Bankr. S.D.N.Y. 2004)("The Court desires to make it clear to the City that it is required to move for stay relief if it wishes to enforce its rights against a Debtor protected by the United States Code and the federal bankruptcy laws, and it cannot bypass this Court's jurisdiction merely because in their opinion cause exists to lift the stay.")[15] As discussed above, the Rehabilitator's claim to the Trust Monies must fail because the Rehabilitator relies on those parts of the Letter Agreement which are void because they violate the automatic stay.

39.    Additionally, resolution of the dispute concerning the Trust Monies necessarily requires the resolution of Lumbermens' asserted unsecured and administrative claims against the estate.  In fact, Lumbermens previously argued that "[i]t is impossible, and grossly unfair, to separate the issues presented by Ames' Objection [to Lumbermens' administrative claim] from those preserved in the Travelers Final Settlement Order, that are being litigated in the Adversary Proceeding."  (Ex. J, ¶ 7.)  Any effort to now obtain resolution as to the disposition of the Trust Monies outside of the Bankruptcy Court would inherently implicate the very 'impossibility' and 'gross unfairness' that Lumbermens itself had invoked as a sword.  See Indiana Lumbermens Mutual Ins. Co. v. Rusty Jones, Inc., (In re Rusty Jones), 124 B.R. 774, 779 (Bankr. N.D. Ill. 1991)(finding core bankruptcy jurisdiction where Lumbermens asserted that it would be entitled to an administrative claim in the event it was found to be liable on the primary claims).

---

15 For the same reason, the Court has exclusive jurisdiction over Lumbermens' $2 million administrative claim.

40.    Nor should such resolution outside of the Bankruptcy Court be permitted, given Lumbermens' active role in this case and submission to the jurisdiction of the Bankruptcy Court. See In re Agway, Inc., 357 B.R. 195, 203 (Bankr. N.D.N.Y. 2006) (by filing proof of claim, insolvent insurance company submitted itself to the bankruptcy court's core jurisdiction, and further, bankruptcy court's core jurisdiction to adjudicate liquidating trustee's motion to expunge proof of claim filed by insolvent insurance company was not reverse-preempted under the McCarran-Ferguson Act).

### 3.  The Bankruptcy Court Has Exclusive Jurisdiction to Interpret and Enforce its Own Prior Orders

41.    The Bankruptcy Court has jurisdiction to enforce and interpret its own Orders, including its 2007 findings of fact and conclusions of law upholding the Initial Travelers Settlement, and its 2008 Order approving the Final Travelers Settlement. See In re Petrie Retail, Inc., 304 F.3d 223, 232 (2d Cir. 2002)(bankruptcy court properly exercised jurisdiction and properly declined to abstain where motion sought enforcement of bankruptcy court order to avoid inconsistent interpretations of court orders and to prevent forum shopping); In re Ames Dep't Stores, Inc., 317 B.R. 260, 272-273 (Bankr. S.D.N.Y. 2004)(federal courts have power to enforce their own orders and a bankruptcy court "has an important interest in ensuring that its orders are not circumvented").  As noted above, this Court explicitly retained jurisdiction to resolve any disputes concerning the agreed December 2008 Order which specifically deferred disposition of the Trust Monies to be resolved "as part of the Adversary Proceeding in such procedural format as this Court may determine." (December 2008 Order, p. 8).

42.    Moreover, one of Lumbermens' principal defenses is that the Bankruptcy Court's Workers Compensation Order boot-strapped its pre-petition right to reimbursement from Ames

21

into post-petition administrative expense claim. (Answer, ¶¶ 33-34). Ames disputes this theory. Nevertheless, any resolution of the dispute concerning the Trust Monies will require the interpretation of the Workers Compensation Order.

43.     Therefore, a determination as to the appropriate disposition of the Trust Monies and excess collateral is inextricably intertwined with bankruptcy law and the history and orders of this bankruptcy case insofar as the claims to those monies are dependent in large measure upon questions as to whether Lumbermens (i) violated the automatic stay and (ii) improperly affected Ames' rights and interests in and to estate assets. Resolution of these issues necessarily requires the interpretation of numerous orders of this Court including the Workers Compensation Order, the November 5, 2007 Decision, the December 2008 Order, and the September 2011 Decision.

**B.  BECAUSE THIS COURT HAS ALREADY EXERCISED IN REM JURISDICTION OVER THE TRUST MONIES, THIS COURT EXERCISES JURISDICTION TO THE EXCLUSION OF ALL COMPETING COURTS**

44.     Even without reference to this Court's unique role as a Bankruptcy Court, this Court is the proper forum to exercise jurisdiction over the Trust Monies due to the well settled common law principle that the first court to exercise *in rem* or *quasi in rem* jurisdiction excludes all other courts with competing jurisdiction. See Donovan v. City of Dallas, 377 U.S. 408, 412 (1964)(in such cases, "the state or federal court having custody of such property has exclusive jurisdiction."); China Trade and Development Corp. v. MV Choong Yong, 837 F.2d 33, 36 (2d Cir. 1987)("a long standing exception to the usual rule tolerating concurrent proceedings has been recognized for proceedings *in rem* or *quasi in rem*, because of the threat a second action poses to the first court's basis for jurisdiction."). See also Princess Lida of Thurn and Taxis v.

22

Thompson, 305 U.S. 456, 466 (1939)(dispute over a trust subject to the *in rem* rule that the first court takes exclusive jurisdiction).

45.     In fact, this Court has already held that it has *in rem* jurisdiction over the "effort by the estate to avoid a continuing hold on its assets, collateral as posted, as to which [the Bankruptcy Court has] *in rem* jurisdiction, where the circumstances do not permit a continued hold on those assets."  (Ex. C, 50:2-5).  Having already asserted such *in rem* jurisdiction, it falls exclusively to this Court to resolve the disposition of the Trust Monies.

## C.  THE MCCARRAN-FERGUSON ACT MUST BE READ NARROWLY AND DOES NOT SERVE TO OVERRIDE THE BANKRUPTCY CODE'S ESSENTIAL PROVISIONS

46.     Finally, the Rehabilitator asserts that the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015 (the "McCarran-Ferguson Act") – a 1945 act reversing federal pre-emption for state insurance regulations – deprived this Court of jurisdiction to consider Lumbermens' affirmative claims on estate property.  However, nothing in that act applies to invalidate (1) Congress' intent that bankruptcy courts have exclusive jurisdiction over estate property, or (2) the common law principle that courts first exercising *in rem* or *quasi in rem* jurisdiction exclude all others. Instead, the McCarran-Ferguson Act must be read narrowly to further states' interest in regulating and protecting the rights of policyholders to receive payment on their insurance claims. See Gross v. Weingarten, 217 F.3d 208, 221-222 (4th Cir. 2000)("We are skeptical that Congress intended, through the McCarran-Ferguson Act, to remove federal jurisdiction over every claim that might be asserted against an insurer in state insolvency proceedings."); In re First Cent. Fin. Corp., 269 B.R. 502, 519 (Bankr. E.D.N.Y. 2001)("The McCarran-Ferguson Act does not purport to make the states supreme in regulating all the activities of insurance companies and should be construed narrowly in the face of valid federal interests.")

23

47.    In U.S. Dept. of Treasury v. Fabe, 508 U.S. 491, 504-505 (1993), the Supreme

Court made it clear that "ancillary activities" "that do not affect the performance of the insurance

contract or enforcement of contractual obligations do not enjoy the . . . exemption for laws

regulating the 'business of insurance.'"  508 U.S. at 503.[16]  Specifically, the Fabe Court held as

follows in determining whether Ohio's insurance liquidation statute's priority scheme preempted

a federal priority statute:

> [T]he Ohio priority statute, to the extent that it regulates
> policyholders, is a law enacted for the purpose of regulating the
> business of insurance.  To the extent that it is designed to further
> the interests of other creditors, however, it is not a law enacted for
> the purpose of regulating the business of insurance.  Of course,
> every preference accorded to the creditors of an insolvent insurer
> ultimately may redound to the benefit of policyholders by
> enhancing the reliability of the insurance company.  This argument,
> however, goes too far.

Fabe, 508 U.S. at 508-09 (citing Group Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205,

212, 217 (1979)).   Thus, the McCarran-Ferguson Act is not implicated merely because this

Court's determination in the Adversary Proceeding may have an impact on the pool of assets to

be distributed in the rehabilitation, as the Supreme Court "rejected the notion that such indirect

effects are sufficient for a state law to avoid preemption under the McCarran-Ferguson Act."

Fabe, 508 U.S. at 508-09 (citing Royal Drug, 440 U.S. at 217).  The Second Circuit has likewise

held, in a similar context, that the McCarran-Ferguson Act did not alter the normal rules of

federal preemption "so drastically as to force a federal law that clearly intends to preempt all

other state laws to give way simply because the insurance industry is involved."   Lander v.

---

[16] Fabe set forth a three-part test for determining whether McCarran-Ferguson's reverse preemption applies: (1)
whether the federal statute at issue specifically relates to insurance; (2) whether the state statute was enacted for the
purpose of regulating insurance; and (3) would application of the federal statute invalidate, impair or supersede the
state statute.

24

Hartford Life & Annuity Ins. Co., 251 F.3d 101, 117 (2d Cir. 2001). Accordingly, the Rehabilitator cannot contend that the McCarran-Ferguson Act negates the Bankruptcy Court's ability to oversee the orderly administration of Ames' estate.

48.      In fact, the Tenth Circuit Bankruptcy Appellate Panel rejected a similar argument advanced by the state court receiver of an insolvent insurance company. See Strong v. Western United Life Ass. Co. (In re Tri-Valley Distr., Inc.), 350 B.R. 628, 2006 WL 2583247 (10th Cir. B.A.P. 2006) aff'd 533 F.3d 1209 (10th Cir. 2008). There, the bankruptcy examiner filed an adversary proceeding against the state court insurance receiver seeking, among other things, to avoid and return property transferred out of the estate pursuant to Bankruptcy Code section 549 (unauthorized post-petition transfers), section 362 (violations of the automatic stay) and section 363 (unauthorized use of estate property). The receiver, like the Rehabilitator here, claimed that under McCarran-Ferguson, the state's interest in consolidating actions before the receivership court and enjoining proceedings interfering with the receivership, trumped the bankruptcy court's jurisdiction. (Id. at *4). However, the Bankruptcy Appellate Panel rejected that proposition and held that McCarran-Ferguson did not apply. First, the Court noted that if the receiver's "argument were accepted as true, the reach of the McCarran-Ferguson Act would be limitless in the insolvent insurer context." (Id.).[17] Second, the Court found that the Washington state insurance statue governing the insolvency proceeding did not provide for the exclusive jurisdiction over all claims related to an insolvent insurer. To reach this conclusion, the Appellate Panel relied on provisions of the Washington statue "contemplate[ing] that such claims may need to be resolved in other forums," and the receivership order itself, which authorized the

---

[17] The Court also relied upon Fabe and Gross v. Weingarten, cited above, to reject the proposition that all actions relating to a state insurance insolvency proceeding automatically fall under McCarran-Ferguson. (Id.).

insurance receiver to sue or defend suits in other jurisdictions. (Id.)  Here, the Illinois rehabilitation statute and the Rehabilitation Order, similarly allow the Rehabilitator to "bring any action, claim suit or proceeding against…any other person with respect to that person's dealings with the company."  Illinois Insurance Code, 215 ILCS 5/192(3) and Rehabilitation Order, p. 4 (emphasis supplied).[18]  See also McRaith v. American Re-Insurance Co., 2010 WL 624857 at *3 (N.D. Ill. 2010)("Article XIII of the [Illinois] Insurance Code does not purport to confer on state courts exclusive jurisdiction to hear claims filed by the rehabilitator against third parties.")[19]

49.    Moreover, the claims asserted in the Adversary Proceeding by and against Ames are not basic contract claims that just happen to be in the Bankruptcy Court because of Ames' bankruptcy.  Rather, those claims have all arisen because of this bankruptcy proceeding:  Ames has asserted, inter alia, that the November 2003 Letter Agreement between Lumbermens and Travelers damaged the estate because it circumvented the Bankruptcy Code's priorities, that Lumbermens is liable for having violated the automatic stay, and that Ames is entitled to the Trust Monies because of the Final Travelers Settlement Stipulation which was entered in this proceeding and approved, with modifications, in this Court's December 2008 Order.  As noted above, Lumbermens itself argued that its asserted administrative expense claims in this proceeding are "impossible" to separate from the claims with respect to the Trust Monies and

---

[18] In addition, the Appellate Panel relied upon a previous stipulation between the receiver and the bankruptcy examiner providing for bankruptcy jurisdiction. Finally, the Appellate Panel upheld the bankruptcy court's permissive abstention from hearing the examiner's purely state law claims because those claims went "far beyond the determination of whether the Rock Springs property is part of the bankruptcy estate.") (Id. at *5).

[19] In fact, the McRaith court held that McCarran-Ferguson would not even preempt federal diversity jurisdiction because resolving disputes concerning the proceeds available to the rehabilitation would not impair the Illinois insurance rehabilitation scheme:  "[t]he proceeds of any judgment that [the Rehabilitator] obtains in federal court will be distributed to policyholders and other creditors in the rehabilitation proceeding according to their relative priority as determined by state law." (Id.)

this Court's December 2008 Order which "expressly preserved a wide variety of subrogation and setoff rights of Lumbermens, for litigation in the Adversary Proceeding."  (December 2008 Order at ¶ 7.)

50.     As Judge Walrath held in rejecting the argument that the Bankruptcy Court could not hear an objection, pursuant to section 502(d), to a claim filed against the estate by an insurer subject to a state court liquidation:

> Even assuming that a state court could have concurrent jurisdiction over proceedings that arise under or in the bankruptcy case, some proceedings exist that are so intimately tied to the bankruptcy case itself as to prohibit any exercise of concurrent jurisdiction by a state court.

PRS Group, 335 B.R. at 84 (Bankr. D. Del. 2005). The McCarran-Ferguson Act cannot be construed to divest this Court of jurisdiction over claims which arise solely by reason of the bankruptcy process itself, the violation of the automatic stay, and this Court's prior Orders.

## NOTICE

51.     Notice of this motion has been provided by overnight courier service to (i) the Office of the United States Trustee, (ii) counsel for the Rehabilitator, (iii) counsel to the Official Committee of Unsecured Creditors, and (v) all parties in interest who have requested service of process in this case. Ames submits that this constitutes good and sufficient notice of this motion.

## CONCLUSION

For the reasons stated above, the Court should enter an order in the form attached hereto as Exhibit O confirming that this Court has exclusive jurisdiction over the Trust Monies and the disputes concerning them.

Dated: New York, New York
       October 25, 2012

/s/ Avery Samet
Bijan Amini, Esq.
Avery Samet, Esq.
STORCH AMINI & MUNVES PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
Telephone: (212) 490-4100
Facsimile: (212) 490-4208

-and-

PROSKAUER ROSE LLP
Martin J. Bienenstock, Esq.
Timothy Q. Karcher, Esq.
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900

*Attorneys for Debtors
and Debtors in Possession*

28